**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert H. CHANDLER, II,**
**Claimant–Appellant,**

and

**The Real Property Known as Tract 1 of Little River Farms, Route 1, Island Road, Hillsborough, Orange County, North Carolina; Orange County, Defendants,**

**Eastern Skateboard Supply, Incorporated, Claimant.**

No. 93–2064.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1994.

Decided Sept. 27, 1994.

**ARGUED:** Thomas Franklin Loflin, III, Durham, NC, for appellant. Gill Paul Beck, Asst. U.S. Atty., Greensboro, NC, for appellee. **ON BRIEF:** Walter C. Holton, Jr., U.S. Atty., Greensboro, NC, for appellee.

Before WILKINSON, NIEMEYER, and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILKINSON and Judge WILLIAMS joined. Judge WILKINSON wrote a separate concurring opinion.

## OPINION

NIEMEYER, Circuit Judge:

We must consider in this case the important question of whether civil forfeiture to the United States of a 33–acre farm, due to its involvement in violations of the federal drug laws, constitutes an excessive fine under the Eighth Amendment. While the Supreme Court held in *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), that such forfeitures are limited by the Excessive Fines Clause of the Eighth Amendment, it left to the lower courts the task of articulating the appropriate standard for determining excessiveness. We articulate in this case an instrumentality test, rejecting any proportionality test, for determining whether a civil forfeiture under 21 U.S.C. §§ 881(a)(6) & (a)(7) is excessive. After applying the instrumentality test to the facts of this case, and considering the other challenges raised on appeal by the property's owner, we affirm the "decree and judgment of forfeiture" entered by the district court.

I

The United States brought this civil *in rem* action in July 1991 against Tract 1 of Little River Farms in Orange County, North Carolina, seeking to take title to the 33–acre property under 21 U.S.C. §§ 881(a)(6) & (a)(7). Little River Farms is located in a secluded rural area approximately 20 miles from Durham, North Carolina, a couple of miles off the main road. The next closest house is at least 300 yards away from the property. The property is valued at approximately $569,000 and is owned by Robert H. Chandler, II, who inherited the property from his mother at the time of her death in 1978. The government alleged in its complaint that the property was "used or intended to be used in any manner or part to

commit or to facilitate the commission of a violation of Title II of the Controlled Substances Act, 21 U.S.C. [§ 801] *et seq.* " and that the property constituted "proceeds traceable to the exchange of controlled substances."

Chandler, who is the sole owner of Little River Farms, intervened and filed a claim to the property in answer to the forfeiture complaint. Chandler alleged that the property did not constitute the proceeds of any drug dealing and that it was not used to facilitate the commission of any violation of the drug laws. In his answer, he specifically denied the government's allegations of his involvement in drug transactions and claimed that he "has no knowledge of, and did not give any consent for, the subject real property being used or intended for use to commit or facilitate the commission of a violation of 21 U.S.C. § 801 *et seq.* by any person."

At trial, the government's principal witnesses, John Baucom, Doug Frazee and Gary George, all testifying under grants of immunity, stated that they had distributed, packaged, sold, purchased and used controlled substances, including marijuana, cocaine and quaaludes, on Little River Farms. Baucom, who had worked for Chandler at Little River Farms, testified that he was paid in marijuana and cocaine by Chandler for doing maintenance-type work on the property, such as cutting grass, and for doing landscaping and minor carpentry work. He stated that on approximately 30 to 40 occasions, Chandler paid him $100 and a half-gram of cocaine in the basement of the farmhouse. Baucom also testified that he had observed Chandler in the basement with between one and two pounds of marijuana and that he saw others, including George, pick up marijuana from Chandler on at least three occasions. Baucom testified that at times, he was instructed by Chandler to serve as a lookout while Chandler and George consummated drug deals on the farm.

Frazee testified that between 1985 and 1986, he was hired by Chandler to do maintenance work on Little River Farms. He testified that on at least a dozen occasions, he was paid by Chandler with a quarter of a gram to a gram of cocaine for his work done on the property. He stated that the drugs were usually given to him in the kitchen of the farmhouse. In addition, Frazee testified that on at least 15 occasions between 1984 and 1987, Chandler sold him cocaine in quantities ranging from a quarter of a gram to an ounce, worth up to $1,400.

George testified that Chandler distributed two bales of marijuana to him in the garage of Little River Farms in 1987. Each bale weighed between 30 and 40 pounds and was valued at approximately $500 to $600 per pound, for a total value of approximately $30,000 to $48,000. George testified that he had noticed that there were approximately two or three more bales of marijuana stored inside of the trunk of a car in the garage. George also stated that he observed Chris Nash, a Chandler employee, burning marijuana wrappers on the farm.

At the close of the evidence, the district court found that probable cause that the property was subject to a forfeiture had been established by the government and shifted the burden to Chandler to show, by a preponderance of the evidence, that the property was not used for illegal purposes or that he did not know about the illegal use. Chandler presented other witnesses, who had been employed on Little River Farms, who testified that they had never seen Chandler give either Baucom or Frazee any drugs. These witnesses also stated that they had never seen Chandler either use or store drugs on the property. Chandler himself took the stand and testified that he had inherited the property from his parents and that he had not engaged in any illegal activities.

At the conclusion of the evidence, the jury found in favor of the United States, concluding that the property had been used to facilitate the commission of violations of the drug laws, that the property was improved by the proceeds of drug exchanges, and that Chandler could not claim a lack of awareness. On July 9, 1993, the court entered a "decree and judgment" forfeiting the 33–acre farm to the United States subject to prior liens recorded against the property. This appeal followed.

## II

Chandler contends that the forfeiture constituted an excessive fine in violation of the Eighth Amendment.[1] He claims that he has never been convicted of any drug offense in any court and that this civil forfeiture proceeding is being used by the government "to circumvent the criminal burden of proof and to punish [him] by taking away his entire property worth at least $569,000, consisting of approximately 33 acres." He argues that even if he failed to carry his burden with respect to whether the property had been involved in the violation of drug laws, "the most that should have been forfeited under this evidence under the excessive fines clause of the Eighth Amendment would be the house and garage—not the entire 33–acre tract."

█ The Controlled Substances Act, enacted in 1970, includes provisions for the forfeiture to the United States of property used in or intended to be used in the commission of a violation of drug laws which are punishable by more than one year's imprisonment. See 21 U.S.C. § 881. The forfeiture proceeding is civil in nature and relies on the nexus between the property and illegal drug activity. Property is subject to forfeiture if it is given in exchange for drugs; if it is "traceable" to a drug transaction; if it is used in committing or facilitating the commission of a drug offense; or if it is intended for such use. See 21 U.S.C. §§ 881(a)(6) & (a)(7). The owner of an interest in the property may defend against forfeiture by showing that the offense involving the property was committed without his knowledge or consent. Id. Because a forfeiture action is in rem, elements of a claim establishing forfeiture focus principally on the property's role in the offense and not on the owner's guilt.

The procedure governing a civil forfeiture action is that prescribed for seizures in admiralty. See 21 U.S.C. § 881(b). The government may seize property if it can establish probable cause to believe that the property has the statutorily prescribed nexus to illegal drug activity which is punishable by more than one year's imprisonment. See 21 U.S.C. § 881(b)(4). It is not an element of the government's case to prove the involvement of the property's owner in the commission of the offense giving rise to the forfeiture. By carrying the burden of establishing that the violation occurred "without the knowledge or consent of that owner," however, the owner establishes a defense to the forfeiture. See 21 U.S.C. § 881(a)(6) & (a)(7).

The in rem nature of a forfeiture action brought under 21 U.S.C. § 881 and the adverse effect on the property's owner of such forfeiture raises unique questions about the proper application of the constitutional limit of excessiveness, which Chandler claims was exceeded.

In this case, after Chandler made the Eighth Amendment objection and the jury rendered its verdict, but before the court entered the decree and judgment of forfeiture, the Supreme Court decided Austin v. United States, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which held that in rem civil forfeiture proceedings are subject to the limitations of the Eighth Amendment's Excessive Fines Clause.[2] Until then, the circuit courts had been split over whether the Excessive Fines Clause applied in a context outside of criminal proceedings. See United States v. 38 Whalers Cove Drive, 954 F.2d 29, 35 (2nd Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992) (Eighth Amendment applies to in rem civil forfeiture); but see United States v. Tax Lot 1500, Township 38 South, etc., 861 F.2d 232, 234–35 (9th Cir.1988), cert. denied sub nom. Jaffee v. United States, 493 U.S. 954, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989) (Eighth Amendment does not apply in civil proceedings).

In Austin, the Supreme Court reviewed the history of forfeitures in England and in the United States and concluded that "forfeiture generally and statutory in rem forfeiture in particular historically have been understood, at least in part, as punishment." —— U.S. ——, ——, 113 S.Ct. 2801,

---

1. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

2. The district court did not reconsider the Eighth Amendment issue in light of Austin.

2810. Applying the general conclusion to the drug forfeiture statute at issue in the case, the Supreme Court held that forfeiture under 21 U.S.C. §§ 881(a)(4) & (a)(7) constitutes " 'payment to a sovereign as punishment for some offense,' ... and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause." *Id.* at ——, 113 S.Ct. at 2812 (internal citations omitted). The Court, however, declined to put forth a test for determining when a forfeiture is constitutionally excessive, stating that "[p]rudence dictates that we allow the lower courts to consider that question in the first instance." *Id.*

Thus, in order to resolve Chandler's Eighth Amendment challenge, we must first discharge the task given to us by *Austin* of articulating the standard under which to determine when a forfeiture is excessive. Since *Austin*, a few courts have begun to formulate tests for determining the excessiveness of a forfeiture in civil proceedings. These cases seem to recognize two approaches to an excessiveness inquiry, one utilizing the instrumentality principle proposed by Justice Scalia in his concurring opinion in *Austin*, and the other adopting the traditional Eighth Amendment proportionality principle articulated in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *See United States v. R.R. # 1*, 14 F.3d 864 (3d Cir. 1994); *United States v. Alexander*, 32 F.3d 1231 (8th Cir.1994); *United States v. 6625 Zumirez Drive*, 845 F.Supp. 725 (C.D.Cal. 1994). The tendency of the courts, including those listed above, has been to combine the two principles of instrumentality and proportionality to come up with various multi-factor tests. *See, e.g., United States v. 6625 Zumirez Drive*, 845 F.Supp. at 732 (describing the factors as "(i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use"); *United States v. 429 S. Main St.*, 843 F.Supp. 337, 341 (S.D.Ohio 1993) ("it is appropriate to compare the value of the property against the nature of the offense ... [and] also appropriate to look to the nature of the rela-

tionship between the crime and the property in question"); *United States v. 427 & 429 Hall Street*, 853 F.Supp. 1389, 1399 (M.D.Ala. 1994) (putting forth a two step balancing test "which emphasizes 'instrumentality' analysis but includes 'proportionality' analysis").

While we have not addressed the question directly, we stated in dictum in *United States v. Borromeo*, 1 F.3d 219 (4th Cir.1993), in the context of remanding a case to the district court for further development, that in light of *Austin*, "an inquiry into the proportionality between the value of the instrumentality sought to be forfeited and the amount needed to effectuate the legitimate remedial purposes of the forfeiture would seem to be in order." *Id.* at 221. We now undertake to state the appropriate standard to be applied in conducting an excessiveness analysis under the Eighth Amendment for *in rem* forfeitures. To do this, we begin by looking more closely at the historical justification for forfeiture and the effect that a forfeiture has on the property's owner.

*In rem* forfeitures were historically grounded on the fiction that the property itself was considered the "offender" and accordingly, the innocence of an owner was not a defense. *See The Palmyra*, 25 U.S. (12 Wheat.) 1, 15, 6 L.Ed. 531 (1827) ("the proceeding *in rem* stands independent of, and wholly unaffected by any criminal proceeding *in personam* "); *Dobbins's Distillery v. United States*, 96 U.S. 395, 400, 24 L.Ed. 637 (1877) ("the thing in such a case is primarily considered as the offender, or rather that the offence is attached primarily to the thing"); *J.W. Goldsmith, Jr.-Grant Co. v. United States*, 254 U.S. 505, 513, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921) ("It is the illegal use that is the material consideration, it is that which works the forfeiture, the guilt or innocence of its owner being accidental."). Nonetheless, a forfeiture of property effects punishment on its owner. This appears more clearly so when, as provided in the Controlled Substances Act, the forfeiture law provides an innocent owner defense, implying that some owner culpability is being punished by the Act's forfeiture provisions. *See* 21 U.S.C. §§ 881(a)(6) & (a)(7). In his concurring opinion in *Austin*, Justice Scalia, summariz-

ing the Act's conceptual basis in this regard, stated: "the property must 'offend' *and* the owner must not be completely without fault." —— U.S. at ——, 113 S.Ct. at 2814 (Scalia, J., concurring). Since, however, the *property* itself is the object of the action, and not its value, Justice Scalia noted, the value of the property is irrelevant to whether it is forfeitable. *Id.* He added, "the question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense." *Id.* at ——, 113 S.Ct. at 2815. Justice Scalia concluded that any analysis under the Eighth Amendment into excessiveness thus must go to whether the property was "an instrumentality of the offense." *Id.*

It is apparent that Congress, in providing for civil forfeiture of property involved in drug offenses for which punishment exceeds one year, *see* 21 U.S.C. § 881, did not intend to punish or fine by a particular amount or value; instead, it intended to punish by forfeiting property of whatever value which was *tainted* by the offense. Accordingly, the constitutional limitation on the government's action must be applied to the degree and the extent of the taint, and not to the value of the property or the gravity of the offense.

The question of excessiveness is thus tied to the "guilt of the property" or the extent to which the property was involved in the offense, and not its value. This point can be illustrated by comparing two hypotheticals. Forfeiture of a $14 million yacht, specially outfitted with high-powered motors, radar, and secret compartments for the sole purpose of transporting drugs from a foreign country into the United States, would probably offend no one's sense of excessiveness, even though the property has such a high value. On the other hand, forfeiture of a row house, which is owned by an elderly woman and which shelters her children and grandchildren, upon discovery of a trace amount of cocaine in a grandson's room, might arguably be found to be excessive, even though the house has a relatively low value of $30,000. In both cases, the intuitive excessiveness analysis centers on the *relationship* between the property and the offense—the more incidental or fortuitous the involvement of the property in the offense, the stronger the argument that its forfeiture is excessive. When measuring the strength or extent of the property's relationship to the offense, *i.e.*, its instrumentality in the offense, we would look at whether the property's role was supportive, important, or even necessary to the success of the illegal activity. We would also inquire into whether the use of the property was deliberate or planned, as distinguished from incidental or fortuitous. We would note whether the property was used once or repeatedly, whether a small portion was used, and whether the property was put to other uses and the extent of those uses.

While our aim under this instrumentality test for determining excessiveness is directed at discovering the property's role in the offense, we are also mindful that the punishment effected by a forfeiture is imposed on the owner. Thus, while the extent of the owner's culpability may be of minor relevance to the question of whether, *velnon,* a forfeiture can properly be imposed, it becomes more relevant when determining whether the "fine" is excessive. Thus, where the owner's involvement in the offense is only incidental, as opposed to extensive—*e.g.,* where he is simply aware of the offense but not a perpetrator or conspirator—this fact will weigh on the excessiveness side of the scales.

Finally, we note that since the property *in kind* is at stake, and not its value, a judgment of forfeiture is largely an all-or-nothing situation, and an inquiry into excessiveness can determine only on which side of the line the facts place the property. We might very well say that it would be an excessive "fine" to forfeit a building in which "an isolated drug sale happens to occur," *see Austin,* —— U.S. at ——, 113 S.Ct. at 2815, but that it would not be excessive to forfeit a building that acted solely as a drug emporium for packaging, selling, distributing, and using drugs. However, a concern about excessiveness may be tempered by the pragmatic possibility of separating offensive property from nonimplicated property, when the offending property is readily separable. *See Austin,* —— U.S. at ——, 113 S.Ct. at 2815 (Scalia, J., concurring).

■ For these stated reasons, we now hold, in determining excessiveness of an *in rem* forfeiture under the Eighth Amendment, that a court must apply a three-part instrumentality test that considers (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder. In measuring the strength and extent of the nexus between the property and the offense, a court may take into account the following factors: (1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense. No one factor is dispositive but, to sustain a forfeiture against an Eighth Amendment challenge, the court must be able to conclude, under the totality of circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense, or would have been, had the offensive conduct been carried out as intended.[3]

■ In adopting this instrumentality test for determining excessiveness of *in rem* forfeitures, we are mindful that some courts have also considered and adopted a proportionality test. *See, e.g., United States v. R.R. # 1,* 14 F.3d at 874–75; *United States v. 6625 Zumirez Drive,* 845 F.Supp. at 732–33. Traditionally, the principle of proportionality in the Eighth Amendment has been associated with the Cruel and Unusual Punishment Clause, rather than the Excessive Fines Clause. *See Weems v. United States,* 217 U.S. 349, 366–67, 30 S.Ct. 544, 548–49, 54 L.Ed. 793 (1910). In *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983), the Supreme Court applied the principle to hold that the Cruel and Unusual Punishment Clause "prohibits not only barbaric punishments, but also sentences that are *disproportionate to the crime committed.* " (Emphasis added). At issue in that case was the constitutionality of a life imprisonment without parole sentence for an offender who committed his seventh nonviolent felony by uttering a 'no account' check in the amount of $100. The Court's three-part test in *Solem* has come to be standard inquiry in constitutional proportionality analysis, looking to: 1) the inherent gravity of the offense, 2) the sentences imposed for similarly grave offenses in the same jurisdiction, and 3) sentences imposed for the same crime in other jurisdictions. 463 U.S. at 290–91, 103 S.Ct. at 3009–10.

■ We conclude, however, that the above three-part test does not apply to the Excessive Fines Clause analysis for two reasons. First, the holding of *Solem* has been put into doubt by *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). At least two justices, Justice Scalia and Chief Justice Rehnquist, flatly stated that the proportionality principle did not exist in the Eighth Amendment and thus *Solem* was wrongly decided. *Id.* at 964–66, 111 S.Ct. at 2686. Although the separate opinion of Justice Kennedy, joined by Justice O'Connor and Justice Souter, did not go so far, it did limit the scope of *Solem,* stating, "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.". *Id.* at 1000, 111 S.Ct. at 2705.

■ Second, the *Solem* proportionality principle, if it does exist in the Eighth Amendment, derives from the Cruel and Unusual Punishment Clause and not the Excessive Fines Clause. While the principle of proportionality is traditionally associated with discussions of whether punishment is cruel and unusual, *see, e.g., Harmelin v. Michigan,* 501 U.S. at 957, 111 S.Ct. at 2680, we believe that it is not applicable when considering the excessiveness of a forfeiture

---

**3.** We do not find that the approach articulated here and that expressed in the concurring opinion are in any sense inconsistent.

of specifically identified property. The statute does not limit the value of property subject to forfeiture, and the history of the Eighth Amendment supports no such constitutional limitation. *See Austin,* —— U.S. at ——, ——, 113 S.Ct. at 2807–10.

With these principles at hand, we turn to the facts of this case to see whether the forfeiture of Chandler's property was excessive.

### III

■ Addressing first the nexus between the property and the offense, the testimony of government witnesses Frazee, Baucom and George established that from 1984 to 1988, Chandler's property served as the situs for over 130 drug transactions, some involving thousands of dollars. While it would appear that the farm had substantial purposes other than serving as an instrument of drug activity, the property nevertheless was an important, if not necessary, instrument for the drug activity, in providing a secluded location. Baucom testified that Chandler instructed him to serve as a lookout on the long private road leading up to the property, evidencing the secluded nature of the property which provided privacy for the illegal activities. Evidence indicated that neither the house in which the drug transactions took place nor the garage in which the drugs were stored could be seen from the public road. Evidence also showed that a security camera was installed on the private driveway, near the gate at the entrance to the property, further indicating the intent of the owner to utilize the property's seclusion in carrying out the alleged offenses.

On the extent of the use of the property for illegal activities, evidence showed not only the large number of transactions over a period of years, but also that the use permeated to the basement, the kitchen, the garage, and the long driveway. Moreover, the property itself was maintained and improved by payments made with drugs. Baucom testified that he was paid in cocaine and marijuana, or combination of drugs and money, on at least 30 to 40 occasions for cutting grass, landscaping, and doing minor carpentry work on Little River Farms. Frazee testified that between 1985 and 1986, he was paid at least a dozen times by Chandler with a quarter of a gram to a gram of cocaine for work performed on the property.

Considering the second part of the test, the role and culpability of Chandler as the property's owner, it can hardly be argued that he was not culpable. The testimony of government witnesses showed that he procured drugs, stored them on the property, paid his employees with drugs, and sold drugs to others. The evidence amply shows that he was not merely aware, but actively involved, in the commission of the illegal conduct.

■ Finally, while Chandler has urged that we mitigate the punishment that the forfeiture will impose on him by forfeiting only the areas of the 33–acres where the farmhouse and the garage are located, he has provided no evidence that this area is on a separately platted property that could be readily separated. In the absence of such evidence, and in light of the ample evidence in support of forfeiture, the entire 33–acre property, as identified in the warrant for its seizure, may be forfeited.

In short, the overwhelming evidence presented by the government showed that Little River Farm was both a substantial and meaningful instrumentality of the alleged drug offenses. We have no difficulty in concluding that the forfeiture of the 33–acre property known as Little River Farms was legal under 21 U.S.C. §§ 881(a)(6) & (a)(7) and did not violate the Excessive Fines Clause of the Eighth Amendment.

### IV

■ We briefly address the remainder of the challenges to the forfeiture presented by Chandler on this appeal. Chandler asserts that the district court erred in holding that the government had proffered a race-neutral explanation for peremptorily challenging the last black woman from the venire. During the jury voir dire, when the government's attorney struck the last black venire member, Ms. Brown, from the pool, Chandler's counsel objected on *Batson* grounds. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.

1712, 90 L.Ed.2d 69 (1986) (prohibiting racial discrimination in exercising peremptory challenges in criminal litigation); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (applying *Batson* to civil litigation). When the district court asked the government attorney for an explanation, the attorney explained that Ms. Brown did not seem to have strong convictions; that he had no sense about Brown's views regarding drugs and forfeiture; that she was young, unmarried, and had no children; that her boyfriend, who was not working, was in the court; and that he preferred leaving an older woman on the jury who had a family and provided him with a better attitude with respect to what the government was trying to accomplish. The court concluded that the reasons were race-neutral and overruled Chandler's objection. On appeal, Chandler does not take issue with the government's position that the articulated reasons were race-neutral. Rather, he argues that a review of the record reveals that Ms. Brown in fact had stated that she had two children and that therefore the government's reason for striking her was a pretext. We find nothing, however, to establish that the government's attorney did not believe the grounds it gave during the trial. Indeed, Chandler's attorney did not point out the mistaken fact at the time. Chandler has not shown that the government's preemptory challenge of Brown was racially motivated.

■ Chandler also asserts that the district court erred by allowing the government to present its evidence first in the trial and by placing the burden of proof on him after the government's case. Chandler asserts that because there was a first trial which ended in a mistrial, where the government had established probable cause as a matter of law, it was repetitive for the court to require the government to present its evidence again. Chandler argues that the district court should have declared, as a matter of law, that the government had established probable cause and permitted Chandler to present his evidence first. As the district court properly noted, however, it would have been improper for the district court to limit the government to the evidence presented in the first trial but allow Chandler to include new evidence,

with the help of the previous trial's experience. Thus, it was not an abuse of discretion for the district court to arrange the order of proof under the forfeiture statute, by having the government present its probable cause showing first, and then having the burden shift to the claimant. *See United States v. 7715 Betsy Bruce Lane Summerfield,* 906 F.2d 110, 111 (4th Cir.1990). In addition, we have held in *United States v. Santoro,* 866 F.2d 1538, 1544 (4th Cir.1989), that it is not unconstitutional to shift the burden to the claimant, after the probable cause showing, to prove his entitlement to the property: "Undoubtedly, Congress may alter the burden of proof in a civil proceeding as it sees fit, without constitutional implications."

■ Chandler next asserts that the district court's refusal to admit a prior inconsistent written statement of one of the government's witnesses, Thomas Roberts, was an abuse of discretion. Chandler asserts that that inconsistent statement would have impeached Robert's testimony that Chandler helped him unload a shipment of marijuana from Colombia. The district court has broad discretion to admit or reject evidence, *United States v. Simpson,* 910 F.2d 154, 157 (4th Cir.1990), and here, the court independently determined that the prior written statement was irrelevant to the current proceedings because it described drug transactions that were distinct from Chandler's own activities. We conclude that the district court's ruling fell well within the court's discretion.

■ Finally, Chandler asserts that the district court's instruction to the jury that his interest in Little River Farms was forfeitable even if it facilitated only one felony drug offense was erroneous. We reject this argument. This Court has explicitly held that "a *single* felony drug violation is all that is necessary to trigger 21 U.S.C. § 881(a)(7)." *United States v. Santoro,* 866 F.2d at 1542.

For the foregoing reasons, the district court's "decree and judgment of forfeiture" is accordingly

*AFFIRMED.*

WILKINSON, Circuit Judge, concurring:

I am pleased to concur in Judge Niemeyer's fine opinion. I agree that an instrumentality, rather than a proportionality, test is the proper one to determine whether forfeiture of property under 21 U.S.C. § 881(a) is excessive under the Eighth Amendment.

An Eighth Amendment instrumentality test is preferable to a proportionality test because it promotes both judicial economy and judicial restraint. To begin with, the Eighth Amendment instrumentality test bears a far closer relationship to the questions actually decided in a civil forfeiture proceeding. A verdict in favor of forfeiture will foreclose, in most instances, an Eighth Amendment claim under an instrumentality inquiry. This is as it should be, since the Eighth Amendment does not authorize judges to apply their personal notions of propriety to civil forfeiture proceedings.

## I.

The language of § 881 sets a clear standard for determining whether property is forfeitable:

> (a) **Property subject.** The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> .     .     .     .     .
>
> (7) All real property, ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(7). The standard established by § 881 goes far toward answering the instrumentality inquiry: real property is subject to forfeiture only if the property has been used, or was intended to be used, to facilitate the commission of a drug-related crime that would be punishable by more than one year's imprisonment under the Con-

trolled Substances Act. *See Austin v. United States,* — U.S. —, —, 113 S.Ct. 2801, 2811, 125 L.Ed.2d 488 (1993). If the statutory prerequisites for forfeiture are carefully observed, a judgment of forfeiture generally will satisfy the instrumentality test adopted by the court today. Eighth Amendment concerns will often be subsumed within the finding in favor of forfeiture.

The congruence between civil forfeiture judgments and an Eighth Amendment instrumentality inquiry can easily be demonstrated. The court declares that "to sustain a forfeiture against an Eighth Amendment challenge, the court must be able to conclude, under the totality of circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense." 36 F.3d at 365. This inquiry mirrors the threshold probable cause inquiry in an *in rem* forfeiture proceeding almost exactly. A judge or jury asking whether the statutory nexus between the property and the illegal activity has been established will nearly answer the question the court's totality test seeks to resolve. That is, a judgment of forfeiture *presumes* a consideration of the totality of the circumstances: "It is well established, both in the law of forfeiture and in other areas of the law, that the probable cause inquiry is a flexible one in which the court must consider the 'totality of the circumstances.'" *United States v. $121,100.00 in United States Currency,* 999 F.2d 1503, 1506 (11th Cir.1993) (citations omitted). *See also United States v. Thomas,* 913 F.2d 1111, 1115 (4th Cir.1990) (noting that in a forfeiture proceeding, a court determines probable cause by reference to "the facts in their totality").

The factfinder's task in a forfeiture proceeding is to determine whether the subject property was "substantially connected" to illegal activity. *See United States v. 7715 Betsy Bruce Lane,* 906 F.2d 110, 112–13 (4th Cir.1990) (probable cause is established by a "substantial connection" between the property and the illegal activity). This question too parallels the Eighth Amendment instrumentality inquiry. The statutory "innocent owner" defense in § 881(a)(7) likewise goes far toward assuaging Eighth Amendment con-

cerns: an owner has an opportunity to refute the government's prima facie showing of probable cause by asserting his lack of culpability. To the degree that this court lists as Eighth Amendment concerns either of these statutory factors—the nexus between the property and the illegal activity and the owner's culpability—these include the very elements one would expect to come before the trier of fact in a forfeiture proceeding. Indeed, the court notes that both factors were determined by the jury in this case to weigh in favor of forfeiture: "At the conclusion of the evidence, the jury found in favor of the United States, concluding that the property had been *used to facilitate the commission of violations of the drug laws,* ... and that Chandler could not claim a lack of awareness." 36 F.3d at 361 (emphasis added).

In *United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453 (7th Cir.1980), the Seventh Circuit, in affirming the right to trial by jury in a civil forfeiture proceeding under 21 U.S.C. § 881, observed that "the infusion of the earthy common sense of a jury might upon occasion mitigate appropriately the harsh impact sometimes characteristic of *in rem* procedure." *Id.* at 469. By answering the statutory inquiry in the affirmative, the trier of fact determines not only that forfeiture is appropriate, but to a great extent that forfeiture of the property is not harsh or excessive under an instrumentality test. Such a verdict would foreclose an Eighth Amendment challenge in all but egregious circumstances.*

## II.

A straight proportionality test, in contrast to an instrumentality test, bears little analytical relationship to a judgment of forfeiture. A proportionality analysis requires consideration of the value of the illegal drugs at issue and whether the value of the subject property overwhelms the amount involved in the drug transaction. *See, e.g., United States v. 427 and 429 Hall Street,* 853 F.Supp. 1389, 1400 (M.D.Ala.1994) (proportionality inquiry measures "the value of the defendant property against the scope of the drug trafficking"). This question does not necessarily mirror the factfinder's inquiry. It is possible that a factfinder could find a nexus between the subject property and a drug transaction sufficiently close to satisfy the statutory standards, yet the property could still be deemed non-forfeitable under a proportionality inquiry if it were, for instance, an extremely expensive home or automobile. Too frequently proportionality analysis serves only to insulate those who have "hit it big" in the drug trade from the forfeiture prescribed by statute.

## III.

In sum, I agree that an instrumentality test is the appropriate test to be applied in determining whether a forfeiture is excessive under 21 U.S.C. §§ 881(a)(4) and (a)(7). Any constitutional test, however, must be designed with an appropriate measure of judicial restraint. The results under an open-ended, multi-factor Eighth Amendment inquiry have displayed a lack of consistency and structure. *Compare United States v. 6625 Zumirez Drive,* 845 F.Supp. 725, 732–38 (C.D.Cal.1994) (adopting a three-part excessiveness test and holding forfeiture unconstitutional) *with 427 and 429 Hall Street,* 853 F.Supp. at 1399–1402 (adopting a different excessiveness test and holding forfeiture constitutional). A recognition of the relationship between the Eighth Amendment inquiry and

---

* In some instances, of course, the nexus inquiry is never presented to a jury but is resolved as a matter of law by the court. Specifically, if a claimant fails to rebut the government's showing of probable cause, the government is entitled to forfeiture of the subject property on summary judgment. *See Thomas,* 913 F.2d at 1114. A finding of probable cause is also a question of law which is subject to plenary review on appeal. *See, e.g., 7715 Betsy Bruce Lane,* 906 F.2d at 112. These principles do not, however, alter the analysis of the Eighth Amendment inquiry. Whether a court awards forfeiture on summary judgment or a trier of fact awards forfeiture after a trial, the very fact that the statutory requisites for forfeiture have been satisfied goes far toward precluding an Eighth Amendment challenge. An affirmance of the trial court's finding of probable cause, for example, will generally foreclose independent consideration of an Eighth Amendment excessiveness challenge: if the subject property has been found to be "substantially connected" with illegal drug activity, the instrumentality test has almost by definition been satisfied.

the civil forfeiture scheme will remedy this difficulty. The jury's verdict of forfeiture in this case necessarily meant that the property was used to facilitate violations of the drug laws and that appellant could not avail himself of an innocent owner defense. Appellant has failed to establish the egregious circumstances necessary to overturn the jury's verdict of forfeiture on Eighth Amendment grounds. It follows that I would affirm the judgment.