**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 97-4021

MICHAEL RAY SHIFFLETT,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-91-33)

Argued: April 8, 1998

Decided: September 24, 1998

Before WIDENER, MURNAGHAN, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for Appel-
lant. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Robert P.
Crouch, Jr., United States Attorney, Jennie L.M. Waering, Assistant
United States Attorney, Kenneth N. Sorenson, Assistant United States
Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In a prior opinion, a panel of this court reversed the conviction of Michael Ray Shifflett on a charge of engaging in a continuing criminal enterprise ("CCE"), and remanded the case to the district court for resentencing. United States v. Shifflett, No. 93-9563, 1995 WL 125506 (4th Cir. Mar. 23, 1995) (unpublished) (per curiam). The panel further concluded that the district court had committed reversible error by entering an order of forfeiture without first determining whether the forfeiture was proportional to Shifflett's crimes of conviction, and ordered the district court on remand to perform a proportionality review. Id.

Shifflett now appeals the sentence imposed on remand, arguing that the district court failed to make adequate findings regarding the quantity of drugs for which Shifflett was responsible. He also contests the recommended finding contained in the presentence report, arguing that it is based on unreliable evidence. According to Shifflett, the reliable evidence of drug weight yields a figure materially lower than that recommended by the presentence report. Shifflett also appeals the district court's conclusion that the criminal forfeiture of his property was not constitutionally excessive.

Finding no error in Shifflett's sentence or the order of forfeiture, we affirm. Jurisdiction in the district court was proper pursuant to 18 U.S.C. § 3231. We have jurisdiction of the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

2

I

A

Following a trial in the United States District Court for the Western District of Virginia, a jury convicted Shifflett of five offenses related to his distribution of marijuana and cocaine over a ten-year period, including a charge that Shifflett had engaged in a continuing criminal enterprise. See 21 U.S.C. § 848. Shifflett's sentence was calculated under § 2D1.5 of the United States Sentencing Guidelines, which provides that the base offense level for a CCE conviction shall be the greater of four plus the offense level from § 2D1.1, or 38. The United States Probation Officer prepared a presentence report which concluded that Shifflett was responsible for 2,130.32 kilograms of marijuana, producing an offense level of 32 under § 2D1.1.[1] That number was increased by four, yielding a total offense level of 36. Because the Sentencing Guidelines require a minimum offense level of 38 for a CCE conviction, those calculations were disregarded and Shifflett was assigned a base offense level of 38.

On appeal, we held that there was insufficient evidence to support Shifflett's CCE conviction. Therefore, we reversed the conviction and remanded for resentencing. After Shifflett's case was remanded to the district court, the probation officer prepared an addendum to the original presentence report. The addendum again recommended that Shifflett be assigned responsibility for 2,130.32 kilograms of marijuana, and assigned Shifflett a base offense level of 32.

Shifflett objected to the probation officer's recommendation, arguing that a careful review of the trial testimony supported attribution to Shifflett of no more than 742.603 kilograms of marijuana,[2] and that

---

[1] The total recommended drug weight included: (1) the weight of the marijuana for which Shifflett could be held accountable; (2) the weight of the cocaine for which Shifflett was responsible, converted into drug weight in terms of marijuana; and (3) $154,446.46 in unexplained income converted into drug weight in terms of marijuana.

[2] According to Shifflett, the evidence revealed that he was responsible for 16.803 kilograms of marijuana and 3.629 kilograms of cocaine. After converting the cocaine weight to marijuana weight, Shifflett calculated a total drug weight of 742.603 kilograms.

the government had failed to present any reliable evidence that would support the attribution to Shifflett of more than 2,000 kilograms. Shifflett also denied responsibility for the drugs attributed to him on the basis of the trial testimony of William Ryan, arguing that Ryan perjured himself. In support, Shifflett presented the affidavit of Glen Fowler, in which Fowler averred that Ryan had been untruthful when he testified that he had purchased drugs from Shifflett. Fowler claimed that he and Ryan had often used drugs together and that he knew all of Ryan's drug sources, but that he had"never heard of any drug dealings that mentioned the name of Michael Ray Shifflett."

On September 23, 1996, the district court issued a memorandum opinion overruling Shifflett's objection to the recommended finding contained in the presentence report. The district court first concluded that the mandate of this court did not permit Shifflett to reopen the issue of drug weight. Alternatively, however, the district court held that the probation officer's calculation of drug weight in the presentence report was accurate.

Shifflett was sentenced on December 18, 1996. At that time, Shifflett submitted to the court a transcript of a telephone conversation between Gavin White and Shifflett's trial counsel. In that conversation, White admitted that he had purchased drugs from prosecution witness Wilson Steppe, but asserted that he had never seen Shifflett deliver anything to Steppe, and denied having purchased drugs from Shifflett. White's statement directly contradicted a DEA report, admitted at trial, which stated that White had described a transaction between White and Shifflett involving one ounce of cocaine, and had witnessed a delivery from Shifflett to Steppe of ten ounces of cocaine. Shifflett argued that White's refutation of the report required the exclusion of eleven ounces of cocaine from the drug weight attributed to Shifflett. The district court refused to reduce the drug weight, however, concluding that Shifflett's effort to challenge the drug quantity established in the presentence report was "totally beyond the scope of the remand."

In sentencing Shifflett, the district court adopted the drug weight finding recommended by the presentence report and assigned Shifflett a base offense level of 32. Shifflett has appealed.

4

B

Shifflett first argues that the district court erred by refusing to consider the issue of drug weight de novo. We agree that the mandate issued by this court permitted reconsideration of drug quantity. Although the original presentence report calculated the quantity of drugs attributable to Shifflett, drug weight was not a factor relied on by the district court in sentencing Shifflett. As a consequence, Shifflett had no reason to contest the presentence report's recommended finding on drug weight. Following the reversal of Shifflett's CCE conviction, however, drug weight became the primary determinant of Shifflett's base offense level. Under those circumstances, we conclude that the district court was authorized to consider the question of drug weight de novo. See United States v. Bell , 5 F.3d 64, 67 (4th Cir. 1993) (holding that when a "mandate of the appellate court instructs or permits reconsideration of sentencing issues on remand, the district court may consider the issue de novo, entertaining`any relevant evidence on that issue that it could have heard at the first hearing'") (quoting United States v. Cornelius, 968 F.2d 703, 705 (8th Cir. 1992)); United States v. Whren, 111 F.3d 956, 960 (D.C. Cir. 1997) (permitting consideration of "such new arguments . . . as are made newly relevant by the court of appeals' decision" and stating that "[a] defendant should not be held to have waived an issue if he did not have a reason to raise it at his original sentencing"), cert. denied, 118 S. Ct. 1059 (1998).

We find that Shifflett is mistaken, however, in claiming that the district court failed to consider his objections to the presentence report. With the exception of the evidence regarding the DEA report, the district court did not refuse to hear Shifflett's objections, but rather, permitted Shifflett to present his reasons for disagreeing with the presentence report and to examine the probation officer regarding the basis for the recommended finding.

We agree with Shifflett that the district court erred when it refused to consider Gavin White's statement, which contradicted evidence that the probation officer relied on in calculating drug weight. Nevertheless, we conclude that the error does not require reversal, because

5

the exclusion of the 11 ounces attributed to Shifflett on the basis of the DEA report would have no material effect on his sentence.**3**

We reject Shifflett's contention that the district court failed adequately to resolve his objections to the presentence report's recommended finding on drug weight. Although the district court must decide disputed factual issues at sentencing, United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993), it need not "separately recite its findings as to each controverted matter," but may discharge its duty by expressly adopting the recommended finding contained in the presentence report. United States v. Morgan, 942 F.2d 243, 245 (4th Cir. 1991); see United States v. McManus, 23 F.3d 878, 887 (4th Cir. 1994). The district court employed the latter approach here, stating in a memorandum opinion: "After considering the evidence presented at trial, the original and amended presentence reports, and defendant's objections, this court would, if it returned to the issue, conclude that the probation officer properly calculated the amount of drugs for which defendant should be held responsible."

The sole remaining question is whether the district court clearly erred in finding that Shifflett was responsible for more than 2,000 kilograms of marijuana. See McManus, 23 F.3d at 882; Morgan, 942 F.2d at 245. The government must prove by a preponderance of the evidence the quantity of drugs for which a defendant should be held accountable at sentencing. United States v. Hippolyte, 65 F.3d 1151, 1158 (4th Cir. 1995), cert. denied, 116 S. Ct. 1558 (1996). The court is not limited to considering information that would be admissible under the rules of evidence, but "may consider relevant information without regard to its admissibility . . ., provided that the information has sufficient indicia of reliability to support its probable accuracy." United States Sentencing Guidelines Manual § 6A1.3(a). The district court may rely on information contained in the presentence report unless the defendant affirmatively shows "that the information in the

---

**3** The Sentencing Guidelines provide for the assignment of a base offense level of 32 if the defendant is responsible for more than 5 to 15 kilograms of cocaine or 1,000 to 3,000 kilograms of marijuana. The exclusion of 11 ounces of cocaine would not lower the drug weight attributable to Shifflett below the minimum thresholds of 5 kilograms of cocaine or 1,000 kilograms of marijuana.

6

presentence report is unreliable, and articulate[s] the reasons why the facts contained therein are untrue or inaccurate." United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990); United States v. Love, 134 F.3d 595, 606 (4th Cir.), cert. denied sub nom. Sheppard v. United States, 118 S. Ct. 2332 (1998).

In calculating the quantity of drugs attributable to Shifflett, the probation officer relied on interviews of the task force agents who investigated the conspiracy, and testimony adduced at trial. Based on those two sources of information, the probation officer concluded in the presentence report that Shifflett was responsible for 60 to 100 pounds of marijuana, and 10 to 12 kilograms of cocaine over the life of the conspiracy.

There is ample support in the trial record for the probation officer's conclusions regarding the quantity of marijuana attributable to Shifflett. The evidence showed that Shifflett distributed marijuana from the late 1970s until 1989, when he began distributing cocaine. Raymond Sipe testified that between 1987 and 1989, he purchased at least 66 pounds of marijuana in El Paso, Texas, to deliver to Shifflett in Virginia;[4] Wilson Steppe, 10 pounds; and James Wells, approximately 10-11 pounds. In short, the evidence showed that Shifflett was responsible for at least 86 pounds of marijuana in the late 1980s alone.

Shifflett concedes that the testimony of witnesses at his trial established his responsibility for at least 3.629 kilograms of cocaine. Shifflett disregards, however, William Ryan's testimony that he watched Shifflett cut up a full kilogram of cocaine into smaller portions for resale.[5] Other witnesses testified to the presence of large quantities of

_____

[4] Shifflett omits from his calculations of drug weight 50 pounds that Sipe purchased for Shifflett but never delivered because he was apprehended at a United States Border Patrol Checkpoint. The marijuana, however, is plainly attributable to Shifflett under the relevant conduct provisions of the Guidelines. See United States Sentencing Guidelines Manual § 1B1.3.

[5] We perceive no error in the district court's decision to credit Ryan's sworn testimony rather than Fowler's allegation of perjury. Fowler's claim that he knew all of Ryan's drug suppliers merely because he had shared drugs with Ryan on numerous occasions is not persuasive evidence that Ryan lied under oath about his drug transactions with Shifflett.

cocaine at two parties given by Shifflett, although they could not estimate the quantity.

Furthermore, Shifflett overlooks Wells' testimony that Shifflett had lost $50,000 in an attempt to purchase cocaine from a supplier in Florida. It was established at trial that Shifflett's cost for an ounce of cocaine was generally $700. At that price, a $50,000 transaction would have involved approximately 2.025 kilograms of cocaine. See U.S.S.G. § 2D1.1 cmt. 12 (stating that, in estimating drug weight, a court may consider, "for example, the price generally obtained for the controlled substance"). Shifflett told Wells that he made up to $20,000 per week selling drugs. Shifflett charged his cocaine dealers $1,500 for an ounce of cocaine. Based on those figures, the evidence suggested that Shifflett was selling up to 378 grams of cocaine per week. At that rate, Shifflett could have sold 10 kilograms of cocaine in six months; given that the conspiracy to distribute cocaine lasted approximately two years, we discern no error in the district court's attribution to Shifflett of 10 to 12 kilograms of cocaine.

Shifflett's computation of drug weight is based solely on the testimony of witnesses regarding specific purchases made from or for Shifflett. There was substantial evidence, however, that those specific sales did not reflect the full extent of Shifflett's involvement in the distribution of marijuana and cocaine. Therefore, we conclude that the district court's finding that Shifflett was responsible for more than 2,000 kilograms of marijuana is fully supported by the record. We do not reach Shifflett's remaining argument that the information provided to the probation officer by the task force agents was unreliable.

II

A

Following Shifflett's convictions, the jury returned a special verdict of forfeiture against Shifflett's interest in two parcels of real estate and three vehicles, having concluded that each item was either purchased with proceeds of Shifflett's narcotics crimes or used to facilitate those crimes. See 21 U.S.C. § 853(a). Without performing a proportionality review, the district court ordered the criminal forfeiture of Shifflett's realty and other property.

8

On appeal, this court held that the district court had erred by entering an order of forfeiture without determining whether the forfeiture was proportional to the crime of conviction. Accordingly, the order of forfeiture was vacated and the district court was instructed on remand to perform a proportionality review before entering a forfeiture order.

On remand, the district court held that the forfeiture of Shifflett's property was not constitutionally excessive. The court noted that Shifflett was subject to a fine in the range of $25,000 to $6 million, see United States Sentencing Guidelines Manual § 5E1.2(c)(4), and that the value of the forfeited property was well within those limits. The court continued: "Given the length of the conspiracy, the amount of drugs involved, the number of participants, and the conspiracy's effect on the community, it cannot be said that the forfeiture of defendant's land, house, and truck would be a disproportionate punishment."

B

Because a criminal forfeiture ordered pursuant to 21 U.S.C. § 853(a) is an element of the sentence imposed following a defendant's conviction for substantive drug offenses, and therefore properly characterized as punishment, see Libretti v. United States, 516 U.S. 29, 38-39 (1995), our sole inquiry in analyzing whether the forfeiture is constitutionally excessive is whether the forfeiture "is grossly disproportional to the gravity of a defendant's offense." United States v. Bajakajian, 118 S. Ct. 2028, 2036 (1998); see United States v. Wild, 47 F.3d 669, 676 (4th Cir. 1995) (stating that the excessiveness inquiry "beckons a comparison of the value of the property being forfeited to the gravity of the offense committed by the defendant and the nature and extent of the defendant's activities"). We review the proportionality determination of the district court de novo, Bajakajian, 118 S. Ct. at 2037, and must accept the district court's factual findings unless they are clearly erroneous, id. at 2037 n.10.

Shifflett does not contest the forfeiture of his vehicles, but challenges only the forfeiture of two parcels of property, one approximately 3 acres in size, the other approximately 18 acres. We conclude

9

that the forfeiture of those two parcels of realty does not violate the Excessive Fines Clause. The district court found, and Shifflett does not dispute, that the combined value of the property is "well within" the range of fines permitted by the Sentencing Guidelines and statutory limits, which allow the imposition of a fine between $25,000 and $6 million. See Bajakajian, 118 S. Ct. at 2037 (noting that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature"). We agree with the district court that the forfeiture is justified in light of the length of Shifflett's involvement in narcotics trafficking, the breadth of the conspiracy, and the impact of Shifflett's activities on the community.

Shifflett argues, however, that the district court should not have ordered the forfeiture of the 3-acre parcel of land because it was separable from the 18-acre tract, citing our decision in United States v. Chandler, 36 F.3d 358, 365 (4th Cir. 1994) (stating that the third consideration in the instrumentality test for determining whether an in rem forfeiture is constitutionally excessive is"the possibility of separating offending property that can readily be separated from the remainder"). Shifflett conveniently ignores the jury's verdict that the smaller tract, independent of the larger parcel, was forfeitable as either an instrumentality or proceed of Shifflett's drug crimes.[6] Shifflett's reliance on Chandler, moreover, is misplaced; we have expressly rejected the applicability of the Chandler instrumentality test to criminal in personam forfeitures. Wild, 47 F.3d at 674.

Finally, we find no merit to Shifflett's contention that the district court committed reversible error by issuing a final order of forfeiture before imposing sentence. See 18 U.S.C.§ 3554 (providing that the

_____

[6] To the extent Shifflett attempts to argue that the evidence was insufficient to support the jury's verdict, we find that Shifflett waived that argument by failing to raise it in his first appeal. See United States v. Bell, 988 F.2d 247, 250 (1st Cir. 1993). The mandate of this court expressly provided that the sole question to be decided by the district court on remand was that of proportionality. For the same reason, we decline to consider Shifflett's argument that the district court erred in ordering the forfeiture of the 18-acre parcel without providing a remedy for value Shifflett allegedly added to a house located on the property following his arrest.

10

district court "in imposing sentence upon a defendant . . . shall order, in addition to the sentence that is imposed pursuant to the provisions of section 3551, that the defendant forfeit property"). The forfeiture order, though entered before Shifflett's final sentencing hearing, was expressly incorporated into the Judgment and Commitment Order issued by the district court following the imposition of sentence, and Shifflett has failed to show that he suffered any prejudice as a consequence of the district court's premature issuance of the final order of forfeiture.

III

To summarize, we hold that the district court adequately considered and resolved Shifflett's objections to the presentence report on the issue of drug weight, and that the district court's finding is supported by the testimony adduced at Shifflett's trial. Therefore, we affirm Shifflett's sentence. We also conclude that the forfeiture of Shifflett's property was not disproportional to his crimes of conviction, and therefore affirm the order of forfeiture entered by the district court.

AFFIRMED