UNITED STATES of America,
Plaintiff–Appellee,

v.

William Bennett TANNER,
Defendant–Appellant.

No. 94–5382.

United States Court of Appeals,
Fourth Circuit.

Argued July 13, 1995.

Decided Aug. 11, 1995.

**ARGUED:** Marvin David Miller, Alexandria, VA, for appellant. Stephen Urban Baer, Charlottesville, VA, for appellee. **ON BRIEF:** Robert P. Crouch, Jr., U.S. Atty., Ray B. Fitzgerald, Jr., Asst. U.S. Atty., Gwen Carpenter, Law Intern, Jeff Ross, Law Intern, University of Virginia School of Law, Roanoke, VA, for appellee.

Before WILKINSON and LUTTIG, Circuit Judges, and GEORGE ROSS ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge LUTTIG and Judge GEORGE ROSS ANDERSON, Jr. joined.

## OPINION

WILKINSON, *Circuit Judge:*

William Bennett Tanner was convicted by a jury of selling controlled substances from his drugstore without a prescription, in violation of 21 U.S.C. §§ 841 and 843. In addition to the penalties specified in those sections, the government also sought forfeiture of the properties used in Tanner's illegal enterprise under 21 U.S.C. § 853(a). The main issue raised by Tanner's appeal is whether the elements of criminal forfeitures under § 853 are subject to a "preponderance of the evidence" or a "beyond a reasonable doubt" standard of proof. We find that the preponderance standard governs and was correctly applied by the district court here. Tanner raises a number of additional objections to his conviction and sentence, but there is no merit to any of these challenges, and so we affirm the judgment of the district court.

I.

William Tanner owned and operated the T–Mart drugstore in Staunton, Virginia from 1965 until 1991, where he practiced as a licensed pharmacist. In late 1988 and early 1989, the Virginia State Police received several tips that Tanner was involved in illegal distribution of controlled drugs using forged or nonexistent prescriptions. Undercover officers from the Pharmaceutical Division of the State Police investigated, making several buys of controlled medications at Tanner's store. The police then executed a search warrant at the store and recovered a number of prescription and inventory records. On June 21, 1991 an indictment was filed against

Tanner and "T–Mart Drug Store," charging twenty-four counts of distribution and false reporting in violation of 21 U.S.C. § 841 and § 843. The indictment also included a forfeiture count under 21 U.S.C. § 853, listing the holdings subject to forfeiture as the property at 1310 Churchville Avenue in Staunton, Virginia, where the store was located, as well as all the business assets of T–Mart Drug Store.

A jury trial was held in January of 1993. The government presented testimony from a number of witnesses. The undercover officers involved in the investigation testified that they had been able to purchase several different kinds of drugs at T–Mart without any identification or valid prescriptions. Police investigators also testified that they analyzed the prescription records at the T–Mart store and concluded that many of them were forged or otherwise invalid. Several area doctors were also called to the stand, and they confirmed that the drug orders in the records had been filled by Tanner without any authorization from the doctors or patients listed on the forms. Likewise, T–Mart customers testified that they had received illegal refills from Tanner for a number of years.

At the close of evidence, the jury returned a verdict of guilty on all 24 counts of illegal distribution and record-keeping. Through a subsequent special verdict, the jury also found that Tanner's property was subject to forfeiture under § 853. The defendant's post-trial motions were denied. Then, in late January of 1993, the district court issued a preliminary order of forfeiture for the property listed in the indictment. Tanner was ordered stripped of all his interests in the T–Mart drugstore, including the eight parcels of land at 1310 Churchville Avenue, and all the stock, furnishings, and other assets of the business.

A sentencing hearing was held on January 6, 1994. The Presentence Report (PSR) issued by the U.S. Probation Officer listed the illegally sold drugs as PPPN 100, Phenaphen, ASA, ASAP, Diazepane, PPP, and Tylox, and calculated the total converted weight as 14.662 kilograms. This resulted in a base offense level of 16, which together with a § 3B1.3 enhancement for abuse of a special

skill, produced a total offense level of 18. Tanner was sentenced under the United States Sentencing Guidelines to 27 months, the sentences on each count to run concurrently. In March of 1994, a post-verdict forfeiture hearing was held. Tanner and his wife (who held a separate property interest) each argued at the hearing that the pharmacy was not subject to forfeiture because it was listed as a sole proprietorship in the indictment instead of as its actual status as a corporation. The court rejected this contention, and the forfeiture proceeded as scheduled. Defendant now appeals.

## II.

The bulk of appellant's allegations of error revolve around the forfeiture of the T–Mart Drug Store property under 21 U.S.C. § 853. Section 853 is a criminal forfeiture provision that was enacted by Congress to require, *inter alia*, the surrender of any property derived from the proceeds of illegal drug activities, or any property used in any way to facilitate the commission of such violations. 21 U.S.C. § 853(a). Property subject to forfeiture includes all real property and all "tangible and intangible personal property, including rights, privileges, interests, claims, and securities." 21 U.S.C. § 853(b).

## A.

Tanner's primary argument is that the district court erred when it instructed the jury that application of the forfeiture provision, including whether the property was used to "facilitate" the crime, had to be proven by only a preponderance of the evidence. The correct standard, he argues, is proof beyond a reasonable doubt. This question of the standard of proof turns on whether a § 853 *in personam* forfeiture is a substantive offense or a punishment. If, as appellant maintains, criminal forfeiture under § 853 is an element of the underlying violation or is a separate substantive offense, it must be proven beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). On the other hand, if forfeiture is a question of sentencing, then the elements of § 853 need only be proven by a preponderance of evidence.

*United States v. Johnson*, 54 F.3d 1150, 1156 (4th Cir.1995).

 It is clear that forfeiture under § 853 is in fact punishment. First, the language of the statute plainly indicates that § 853 forfeitures are intended as punishment for substantive offenses laid out elsewhere in the section.[1] In particular, the statutory language provides that forfeitures apply to "[a]ny person *convicted* of a violation" of the drug laws, which presupposes that the defendant has already been tried and convicted of the substantive offense. *See* 21 U.S.C. § 853(a) (emphasis added). The section goes on to state that "[t]he court, in *imposing* sentence on such person, shall order *in addition to any other sentence imposed* pursuant to this subchapter ... that the person forfeit to the United States all property described in this subsection." *Id.* (emphasis added). This clearly assumes that forfeitures are a penalty, and are to be imposed just like any other penalty. Thus, the statute leads directly and inexorably to the conclusion that the preponderance standard should govern forfeiture questions.[2]

1. Section 853(a) reads as follows:

 (a) Property subject to criminal forfeiture
 Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of state law—
 (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
 (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and
 (3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.
 The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

The Supreme Court has also concluded that forfeitures are punishment. In *Alexander v. United States*, —— U.S. ——, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993), for example, the Court considered whether a criminal forfeiture under RICO was subject to the Eighth Amendment prohibition of "excessive fines." —— U.S. at ——, 113 S.Ct. at 2775. The Court held that because an "*in personam* criminal forfeiture ... is clearly a form of monetary punishment," it was indeed subject to the Excessive Fines Clause. *Id.* at ——————, 113 S.Ct. at 2775–76. Likewise, in *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Court discussed forfeitures at length, and again noted that they are essentially punitive in nature. —— U.S. at ——, 113 S.Ct. at 2808. It stated that "[o]ur cases also have recognized that statutory *in rem* forfeiture imposes punishment." *Id.* The Court then held that drug offense forfeitures under 21 U.S.C. § 881 are penalties, and thus also subject to the Eighth Amendment Excessive Fines Clause.[3] *Id.* at ——, 113 S.Ct. at 2810.

21 U.S.C. § 853(a).

2. In addition to discussing forfeitures as punishment, the statute also provides a "rebuttable presumption" that any person convicted of a drug offense "is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence" that the property was acquired during or around the time of the crime and that there was no likely source for such property other than the crime. 21 U.S.C. § 853(d). As other courts have noted, this presumption would be negated if the government still had to prove beyond a reasonable doubt that forfeiture is applicable. *See, e.g., United States v. Elgersma*, 971 F.2d 690, 694 (11th Cir.1992).

 It is true that the § 853(d) standard on its face only refers to property forfeitable under § 853(a)(1) as derived from the proceeds of illegal activity, whereas here we are faced with a forfeiture under § 853(a)(2). It strains logic, however, to hold that a different standard applies to property challenged as forfeitable under § 853(a)(2) for its role in facilitating the crime. Rather, the more plausible reading is that the § 853(d) preponderance standard applies to any attempt to prove property is forfeitable under any part of § 853(a). *See United States v. Bieri*, 21 F.3d 819, 822 (8th Cir.1994).

3. *Austin* and *Alexander* dealt with the Eighth Amendment Excessive Fines Clause. For purposes of the Double Jeopardy Clause, by contrast,

In light of this precedent, it is impossible to view a § 853 forfeiture as a substantive offense.

Several of our decisions have followed the Supreme Court and specifically referred to § 853 criminal forfeitures as penalties rather than as elements of a substantive offense. In *United States v. Wild*, 47 F.3d 669 (4th Cir.1995), we stated in the context of § 853(a) that "an *in personam* criminal forfeiture is a form of monetary punishment assessed against a criminal defendant...." 47 F.3d at 674. *See also, e.g., United States v. Chandler*, 36 F.3d 358, 363 (4th Cir.1994) (noting "a forfeiture of property effects punishment on its owner"), *cert. denied*, — U.S. —, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995).

Finally, most other circuits that have considered this issue have concluded that forfeitures under § 853 are punishment, and thus provable under the preponderance standard. *See, e.g., United States v. Bieri*, 21 F.3d 819, 822 (8th Cir.1994); *United States v. Elgersma*, 971 F.2d 690, 694 (11th Cir.1992); *United States v. Smith*, 966 F.2d 1045, 1052 (6th Cir.1992); *United States v. Herrero*, 893 F.2d 1512, 1541–42 (7th Cir.), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990); *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1576–77 (9th Cir.1989), *cert. denied*, 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990); *United States v. Sandini*, 816 F.2d 869, 875 (3d Cir.1987). It is true, as appellant notes, that a few circuits have suggested that a different standard might govern criminal forfeitures. *See United States v. Dunn*, 802 F.2d 646, 647 (2d Cir.1986), *cert. denied*, 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987); *United States v. Cauble*, 706 F.2d 1322, 1347 (5th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). These decisions, however, did not have the benefit of the Supreme Court's pronouncements in *Austin* and *Alexander*. Thus, they may not

have considered the fact that criminal forfeitures are punishment rather than part of a guilt phase determination.[4] In sum, the case law weighs heavily in favor of treating forfeitures as an aspect of punishment, and so the preponderance standard must control in forfeiture cases under § 853(a).

█ In this case, the district court's instructions properly informed the jury that the forfeiture must be proved by a preponderance of the evidence. Tanner nevertheless argues that the government failed to prove that the property was used to facilitate the crimes under § 853(a)(2). We find no merit in this contention. Numerous witnesses testified that Tanner filled fake prescriptions at the store at 1310 Churchville Avenue. Thus, there was ample proof that the properties at issue were used by Tanner to distribute drugs illegally. We also reject the argument that the government failed to allege or prove Tanner's interest in the forfeited property. The government produced ample records showing that Tanner was indeed the primary owner of the T–Mart business.

**B.**

█ Tanner next contends that the indictment did not provide proper notice of the forfeiture because the forfeiture count did not refer to T–Mart as a corporation, but only as a sole proprietorship. This argument is meritless. It was plain from the outset that the government was seeking forfeiture of the T–Mart Drug Store and its assets. The indictment caption itself lists the defendants as "William Bennett Tanner and T–Mart Drug Store, 1310 Churchville Avenue, Staunton, Virginia." Count 25 of the indictment—the forfeiture count—is likewise clear about the identity of the property sought. It reads in relevant part:

courts have repeatedly noted that any sanction imposed by the government may have a retributive aspect, but this does not mean that a forfeiture constitutes punishment for purposes of double jeopardy so long as the law also serves significant remedial aims. *Austin*, — U.S. at — –—, n. 4, 113 S.Ct. at 2804–5, n. 4; *United States v. Cullen*, 979 F.2d 992, 994 (4th Cir. 1992).

4. Moreover, it is not at all clear that these decisions actually held that the stricter standard controls. In *Dunn*, for example, the court makes passing only reference to an earlier district court opinion on this issue. *Dunn*, 802 F.2d at 647. Likewise, the *Cauble* decision mentions only that the reasonable doubt standard was used by the trial court in a RICO forfeiture action. *Cauble*, 706 F.2d at 1347–48.

*2. Real estate subject to forfeiture:*

All that parcel of land and the improvements thereon, including all buildings, fixtures, attachments, easements, rents, leases, and other personal and real property located at 1310 Churchville Avenue, Staunton, Virginia, and more particularly described as:

> All those eight certain lots or parcels of land, with all improvements thereon, and all appurtenances thereunto belonging ... designated as Lots Nos. One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), and Eight (8) in Block Number Twenty-seven (27) on the map of Staunton Park Addition....

said property presently titled in the name of WILLIAM BENNETT TANNER.

*3. Other property subject to forfeiture:*
WILLIAM BENNETT TANNER operates and did operate, at the above described location, a pharmacy and general merchandise retailing activity called "T–Mart Drug Store", a sole proprietorship. That business, and all business assets including stock held for sale, fixtures, furnishings, and business goodwill and trade, are all subject to forfeiture to the extent of defendant's interest in each.

The indictment could hardly have identified the property more precisely, and thus there is no chance that anyone could be misled by the reference to T–Mart as a sole proprietorship.

In addition, the special verdict form submitted to the jury plainly referred to "T–Mart Drug Store" as the forfeitable property. As the district court stated, "all entities involved in this case, including the jury, were sufficiently aware of both the denotation and connotation of the 'business assets' to be forfeited as identified in Count 25." *United States v. Tanner,* 853 F.Supp. 190, 193 n.4 (W.D.Va.1994).

This was as true of the notice of the later forfeiture hearing as it was of the notice in the indictment. The public notices of forfeiture described the property in a detail equal to that of the indictment. The notice required by due process need only be "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972). It is clear that proper notice was provided here.

## III.

Appellant next alleges that several errors were committed during the course of his trial for the 24 substantive violations under § 841 and § 843. These allegations are without merit.

### A.

■ First, Tanner argues that the government elicited false testimony from one of its primary witnesses: Agent Greg Lam, the officer in charge of the investigation of Tanner's store. At trial, Lam testified that after the government's second attempt to use an undercover agent to buy Tylox at Tanner's store, "someone" in the store called the local police to report it. On redirect, he mentioned that he didn't recall who had called the police. At the sentencing hearing, Lam stated that it was Tanner who had notified the police after the second undercover purchase attempt.

What the appellant calls false testimony involves a slight variation in two witness statements on a minor point, made more than a year apart. The fact that Lam remembered at the 1994 sentencing hearing that it was Tanner who made the police report does not prove he lied at the 1993 trial when he stated he didn't recall who made the call. At any rate, the defendant has offered nothing to show that the prosecution knew or should have known at trial that Lam did in fact recall who had made the police report. *See Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) (requiring a *knowing* use of perjured testimony to establish violation of due process). Hence, this argument must be rejected.

### B.

We also reject appellant's contention that the district court erroneously permitted the government to present evidence of prior bad

acts in violation of Fed.R.Evid. 404(b). The challenged evidence came from Barbara Puffenbarger, a T–Mart customer who testified that Tanner had given her numerous illegal refills of Darvocet N 100 over a period of about five years. These refills occurred during a period prior to the violations alleged in the indictment, leading appellant to characterize Puffenbarger's testimony as inadmissible "propensity evidence." Fed.R.Evid. 404(b).

■ Rule 404(b) provides, however, that while evidence of prior bad acts is not admissible to prove character or propensity, such evidence may be admitted to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* In addition to being relevant to some issue besides character, 404(b) evidence must also be necessary and reliable to be admissible. *See United States v. Greenwood,* 796 F.2d 49, 53 (4th Cir.1986). Evidence is "necessary" if it relates to an essential part of the crime or "furnishes part of the context of the crime." *United States v. Rawle,* 845 F.2d 1244, 1247, n.4 (4th Cir.1988) (quoting *United States v. Smith,* 446 F.2d 200, 204 (4th Cir.1971)). A trial court's decision to admit evidence under 404(b) will not be overturned unless arbitrary or irrational. *Greenwood,* 796 F.2d at 53.

■ Here, Puffenbarger's testimony was relevant to show the defendant's modus operandi. She explained how Tanner took refill orders without a prescription, provided double or triple amounts to his customers prior to going on vacation, and did most of this business on an informal cash basis without bills or other records. This evidence was also relevant to show specific knowledge on the part of the defendant, as well as lack of mistake. Puffenbarger testified that Tanner provided huge amounts of pills, far beyond ordinary refill orders, and charged extremely high prices for these drugs. Such acts indicate that Tanner was fully cognizant that his acts were illegal, and that these sales were not mere accidents. Moreover, this evidence was "necessary" in that it helped provide context for the crime. Given the relevance, necessity, and reliability of this evidence, we cannot say that admission of the Puffenbar-

ger testimony violated Rule 404(b). The evidence also satisfied the requirements of Rule 403, and an instruction on the limited purposes for which it could be considered was given to remove any unfair prejudice.

## IV.

Finally, appellant contends that the district court erred in the calculation of his sentence under the Sentencing Guidelines. Under the Guidelines, amounts of illegally distributed Schedule II, III, and IV drugs are converted to marijuana weight for computational purposes. *See* U.S.S.G. § 2D1.1, comment note 10. In this case, the PSR indicated that the total converted weight for the controlled drugs distributed by Tanner was 14.662 kilograms. Tanner argues that the correct converted weight should have been 11.238 kilograms. Aside from Tanner's say-so, there is nothing in the record to support this assertion. Tanner's calculation is based on only the amounts adduced at trial, and does not account for the evidence of additional amounts which the trial court properly considered as relevant conduct at sentencing. Even assuming appellant is correct, however, the base offense level of 16 remains the same. U.S.S.G. § 2D1.1.

■ Tanner's further argument that the amounts of Tylox (a Schedule II drug) listed in the PSR should have been excluded is meritless. Schedule II drugs such as Tylox carry higher penalties for illegal distribution than Schedule III or IV drugs. The government introduced undisputed evidence that Tanner had distributed 10 units of Tylox to one of its undercover agents. At sentencing, the district court found that Tanner had improperly filled in a quantity of Tylox on a blank prescription form, and that there was a "complete transaction" for the drug.

Tanner argues, however, that he was "entrapped" into distributing the Tylox because on several other occasions he had refused to fill improper Tylox orders, and on one occasion had called the local police to report the customer. Charges of entrapment will often appear when the government employs sting operations to expose criminal wrongdoing. The chief safeguard against entrapment is that there be some indication that the defen-

dant was "predisposed" to commit the charged offense. *Sherman v. United States,* 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958). Here, it is plain that the defendant was predisposed to sell Tylox, and was not induced to do so by the government agent. There was voluminous evidence that Tanner was dispensing a wide variety of controlled drugs with either forged or nonexistent prescriptions. The agents who approached him always gave the defendant several different improper drug orders, and the defendant himself chose which orders to fill. The fact that the amount of Tylox he sold was small compared to the huge quantities of other controlled substances he distributed, or that Tanner refused to sell Tylox on other occasions, does not negate the fact that Tanner sold the Tylox with no more "inducement" than existed in the other undercover deals. He demonstrated his predisposition to commit this offense over and over again, through his pattern of illegal sales of various drugs over many years. Thus, the district court's determination of the total converted drug weight was not clearly erroneous. *See United States v. Daughtrey,* 874 F.2d 213, 219 (4th Cir.1989).

## V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*