**UNITED STATES of America**

v.

**John Wesley OWNBY, Jr.**

**Crim. Action No. 95–00065–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

May 15, 1996.

David L. Heilberg, Charlottesville, VA, for defendant.

Ray B. Fitzgerald, Jr., U.S. Attorney's Office, Charlottesville, VA, for U.S.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Defendant Ownby plead guilty to three counts of a sixteen count indictment charging him with engaging in conduct involving the sexual exploitation of minors, all in violation of 18 U.S.C. § 2252.[1] Pursuant to a plea agreement entered into by the parties, the United States moved to dismiss all of the remaining counts contained in the indictment save for Count Sixteen which seeks the criminal forfeiture, under 18 U.S.C. § 2253, of certain personal and real property belonging to the defendant, including various computer equipment and the defendant's residence.[2]

In an unrelated state proceeding, Ownby plead guilty on January 11, 1996, to three counts of committing forcible sodomy upon a minor. Ownby was sentenced by the state court to three consecutive twenty year terms of imprisonment with thirteen years on each charge suspended.

At the conclusion of Ownby's federal sentencing hearing, conducted on April 29, 1996, this court sentenced Ownby to 36 months imprisonment, to be followed by a three-year term of supervised release. The court ordered that the federal prison term be served consecutively to Ownby's undischarged state prison sentence. The court also ordered the forfeiture of Ownby's home, ruling that the forfeiture of the residence did not violate the Eighth Amendment's prohibition of excessive fines. The court writes here to clarify further its rulings made from the bench at the April 29, 1996 sentencing hearing regarding the forfeiture of Ownby's home and the imposition of a consecutive, as opposed to a concurrent, term of imprisonment for the federal offenses.

### I.

The facts of this case, as gleaned from the various hearings held before the court, are relatively straightforward. Defendant Ownby came to the attention of the Federal Bureau of Investigation ("FBI") during a nationwide investigation conducted by that agency into the trading of child pornography

---

**1.** Specifically, Ownby plead guilty to a single count of receiving by computer a visual depiction, the production of which involved the use of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(2). Ownby also plead guilty to a single count of transporting such an image by computer. 18 U.S.C. § 2252(a)(1). Finally, Ownby plead guilty to a single count of possessing three or more matters containing such depictions. 18 U.S.C. § 2252(a)(4)(B).

**2.** 18 U.S.C. § 2253 provides as follows:

(a) **Property Subject to Criminal Forfeiture—** A person who is convicted of an offense under this chapter ... shall forfeit to the United States such person's interest in—
   (1) any visual depiction described in section 2251, 2251A, or 2252 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter;

(2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and
   (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

Count Sixteen seeks forfeiture of the following property possessed by Ownby pursuant to § 2253(a)(3):
   1.  Computer and hard disk drive;
   2.  Computer Monitor;
   3.  Computer Keyboard;
   4.  Computer Printer;
   5.  Video Recorder Camera;
   6.  AC Power Adaptor;
   7.  RFU Adaptor;
   8.  Two Stereo Computer Speakers;
   9.  76 seized floppy disks;
   10. Peripheral connecting cables and equipment, including computer mouse;
   11. Seized computer program application software, manuals, and support materials;
   12. One parcel of Real Estate (21 acres) (Ownby's home and surrounding property).

on the computer bulletin board services of America On–Line, a leading on-line service. Based upon its investigations, the FBI was able to establish probable cause that Ownby repeatedly accessed America On–Line for the purpose of sending and receiving, by computer, images depicting minors engaged in sexually explicit conduct. The FBI subsequently secured a search warrant for Ownby's residence.

Special Agent Harmon executed the search warrant at Ownby's residence. He testified at a preliminary sentencing hearing[3] that Ownby possessed in his home some 76 floppy diskettes containing a combined 1,612 images. The diskettes were located in a box in the closet of Ownby's bedroom and were organized by their content with some labeled "YM" for "Young Male," and others labeled "YF" for "Young Female." Of the 1,612 images contained on the diskettes, 1,004 were images of juveniles engaged in sexually explicit conduct. Three hundred and twenty-nine of the 1,612 images could not be viewed due to software incompatibilities.

In addition to the floppy diskettes, Special Agent Harmon testified that various files on the hard drive of Ownby's computer contained, all told, 1,610 images of which 64 depicted children engaged in sexually explicit conduct. Another 247 images on the hard drive depicted individuals of questionable age engaged in similar conduct. One hundred and eighty-one images were unable to be viewed due to software incompatibilities. The remaining 1,118 images depicted adults.

Special Agent Harmon testified that Ownby told him, during the execution of the search warrant, that he had been trading pornographic images through computer on-line services for at least a year and a half to two years. Moreover, Ownby divulged that he maintained both a "dirty" account and a "clean" account with America On–Line, conducting legitimate business activities through the clean account. Special Agent Harmon testified that at least one of Ownby's calls to the on-line service lasted over three hours and that during the month of July, 1995, Ownby made 60 calls to America On–Line, only 13 of which were made for the purpose of contacting computers at his place of business.

Finally, Special Agent Harmon testified that Ownby indicated to him that he placed the computer in his home for the dual purposes of trading pornographic images in private (as opposed to through his computer at work) and of conducting legitimate business activities.

As noted above, Ownby plead guilty to three counts of violating 18 U.S.C. § 2252. Ownby raised two issues at the federal sentencing hearing held before this court on April 29, 1996. First, Ownby argued that the criminal forfeiture of his residence violates the Excessive Fines Clause of the Eighth Amendment. Second, Ownby argued that the court should permit his federal sentence to be served concurrently with his undischarged state sentence. The court rejected both arguments from the bench but writes here to amplify its reasoning. The court first discusses Ownby's constitutional challenge to the forfeiture of his residence.

## II.

### A.

Ownby concedes that all of the property listed in Count Sixteen of the indictment is subject to forfeiture under the terms of § 2253 since it was used to commit, or to promote the commission of, the charged offenses.[4] *See* 18 U.S.C. § 2253(a)(3). However, he argues that forfeiture of the real estate

3. The preliminary sentencing hearing, held on March 25, 1996, was adjourned to allow the parties an opportunity to file memoranda on the forfeiture issue.

4. The court notes that Ownby submitted a legal memorandum prior to the preliminary sentencing hearing held on March 25, 1996, in which he suggested the real estate was not subject to forfeiture under the terms of § 2253. When asked by the court at the hearing whether Ownby was contesting his factual guilt under Count Sixteen, and, therefore, whether he wished to go to trial to resolve the factual dispute, counsel for Ownby stated that Ownby conceded the forfeiture statute was applicable and that the government could seek forfeiture of the residence. Counsel elaborated that Ownby was simply making a constitutional argument against forfeiture of the residence.

comprising his residence would constitute a fine so severe as to run afoul of the Excessive Fine Clause of the Eighth Amendment.[5] The government disagrees. The plea agreement calls upon this court to resolve the legal dispute, a task the court undertakes in more extensive detail below.

### B.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amend. VIII. In *United States v. Wild,* 47 F.3d 669 (4th Cir.), *cert. denied sub nom. Greenfield v. United States,* —— U.S. ——, 116 S.Ct. 128, 133 L.Ed.2d 77 (1995), the Fourth Circuit articulated a framework for analyzing excessive fine claims under the Eighth Amendment in cases of *in personam* criminal forfeitures. This framework stresses the proportionality between the offense charged and the value of the forfeiture. Specifically, the court explained in *Wild:*

> [The] inquiry essentially asks whether the value of the property being forfeited is an excessive monetary punishment in relation to the offense giving rise to the forfeiture. In other words, the excessiveness inquiry turns on whether the government can exact a fine in the amount of the forfeiture in light of the defendant's conduct and the offense committed. This inquiry beckons a comparison of the value of the property being forfeited to the gravity of the offense committed by the defendant and the nature and extent of the defendant's activities.

*Id.* at 676.

Ownby suggests that the court should seek additional guidance from the framework devised by the Fourth Circuit in *United States v. Chandler,* 36 F.3d 358 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995). In *Chandler,* the court articulated a three-part excessiveness test

that invites the district court's primary attention to "the nexus between the offense and the property and the extent of the property's role in the offense." *Id.* at 365. However, the "instrumentality" framework developed in *Chandler* applies only in the context of *in rem* civil forfeitures. Indeed, the Fourth Circuit explicitly held in *Wild* that the *Chandler* analysis is inapplicable in the context of *in personam* criminal forfeitures, stating that:

> We cannot accept the government's invitation to apply *Chandler* to this case for several reasons. First, to do so would ignore the Supreme Court's admonition in *Alexander* [*v. United States,* 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993)] that *in personam* criminal forfeitures are the equivalent of monetary punishments assessed against criminal defendants for the commission of some offense. Second, even Justice Scalia's concurrence in *Austin* [*v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)], which this court so heavily relied upon in *Chandler,* noted that the *in rem* excessiveness inquiry differs from the inquiry applied to cases of monetary fines and *in personam* criminal forfeitures because *in rem* civil forfeitures do not concern: 'the appropriate value of the penalty in relation to the committed offense, but [rather] ... what property has been 'tainted' by unlawful use, to which issue the value of the property is irrelevant.' *Austin,* 509 U.S. at 627, 113 S.Ct. at 2815 (Scalia, J., concurring in part and concurring in the judgment).

*Wild,* 47 F.3d at 674–75. Accordingly, the court will apply the *Wild* framework, focusing on the proportionality of the fine (i.e. the forfeiture) to the offense rather than on the degree to which the property was instrumental to the commission of the offense.[6]

### C.

#### 1.

The court begins the analysis by examining the monetary value of the property

---

**5.** Ownby does not raise an Eighth Amendment challenge to the forfeiture of the personal property listed in Count Sixteen.

**6.** The court notes, of course, that there must be some nexus between the property and the offense

for § 2253 to be implicated. *See* 18 U.S.C. § 2253(a)(3). But as noted *supra,* Ownby has conceded that the statute is applicable in this case and, therefore, that such a nexus exists.

sought to be forfeited. According to the presentence report, Ownby's residence has been appraised at $358,000. However, there are two mortgages on the property outstanding, reducing Ownby's equity in the real estate to $88,737.

In determining whether a fine that amounts to $88,737 is constitutionally proportional to the crimes charged, it is helpful to take measure of the potential fines Ownby faces under the statute. Section 3571(b)(3) of Title 18 of the United States Code provides for the imposition of a fine of up to $250,000 upon conviction of a felony offense. *See* 18 U.S.C. § 3571(b)(3). Since Ownby plead guilty to three felony counts under § 2252, it would appear that he could face a total statutory fine of $750,000, well above his equity in the residence. Thus, Ownby's Eighth Amendment argument would seem to lack force since the statute calls for a potential fine well in excess of the value of the forfeitable property. *See United States v. Bieri*, 68 F.3d 232, 238 (8th Cir.1995), *petition for cert. filed*, 64 U.S.L.W. 3625 (U.S. Mar. 5, 1996) (No. 95–1413) ("it cannot be excessive in a constitutional sense to take a tainted property from criminals when that property . . . is worth far less than the legislatively authorized statutory fines") (citing *United States v. Myers*, 21 F.3d 826, 830 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 742, 130 L.Ed.2d 643 (1995) and *United States v. Libretti*, 38 F.3d 523, 531 (10th Cir.1994), *aff'd*, —— U.S. ——, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995)); *see also United States v. Tanner*, 853 F.Supp. 190, 194 (W.D.Va.1994), *aff'd*, 61 F.3d 231 (4th Cir. 1995) (holding that forfeiture of business, real property and promissory notes did "not constitute an excessive penalty under the Constitution . . . in light of the fine which could have been imposed . . .").

However, the United States Sentencing Commission Guidelines ("Guidelines") establish a range of fines in every case, typically below the maximums authorized by statute, that serve to constrain the district court in its imposition of monetary fines. *See* United States Sentencing Commission, *Guidelines Manual* § 5E1.2(b) ("Except as provided in subsections (f) and (i) below, or otherwise

required by statute, the fine imposed *shall be* within the range specified in subsection (c) below") (emphasis supplied). In this case, the applicable fine range is between $6,000 and $60,000 since Ownby's "total offense level" is calculated in the presentence report as nineteen. *See id.* at § 5E1.2(c)(3). Ownby argues that the forfeiture of his residence would amount to an unconstitutionally excessive fine under the Eighth Amendment because his equity in the property, $88,737, exceeds the $60,000 maximum fine prescribed by the Guidelines for the current offenses.

■ The court disagrees. First, the court cannot accept the general proposition that a fine exceeding the maximum fine designated under the Guidelines, but that nonetheless falls below the maximum fine set out under a statute, is *de facto* unconstitutionally excessive. Congress clearly indicated that a fine of up to $250,000 was appropriate for *any* violation of § 2252. Simply because the Guidelines call for a fine below that amount in the specific context of this case does not, by itself, render a fine exceeding the Guidelines maximum, but below the statutory maximum, constitutionally infirm unless the fine authorized by Congress is itself constitutionally suspect on its face. *Cf. United States v. One Parcel Property*, 74 F.3d 1165 (11th Cir.1996) (upholding, against excessive fine challenge, *in rem* civil forfeiture of real property valued at $65,000 where owner of the property, had he been indicted and convicted of drug possession in federal court rather than in state court, would have been subject to a maximum fine under the Guidelines of $40,000). Ownby's argument fails to acknowledge that statutory rights (assuming that § 5E1.2 of the Guidelines gives rise to a substantive right to be fined within the range it establishes) are not necessarily co-extensive with analogous constitutional rights— rather, statutory protections are oftentimes broader than are their constitutional counterparts. Therefore, the existence of a statutory violation is in no way dispositive of whether a constitutional violation has occurred. For example, if a defendant's statutory rights under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, have been violated, it does not follow that his constitutional rights under the Sixth

Amendment's Speedy Trial Clause have also been violated. *See, e.g., United States v. Nance,* 666 F.2d 353, 360 (9th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982) ("The Speedy Trial Act was enacted in part out of dissatisfaction with sixth amendment speedy trial jurisprudence, and to put more life into defendants' speedy trial rights"). Thus, the fact that a court imposes a fine above the range established by the Guidelines does not necessarily mean that a violation of constitutional dimension has occurred. To be sure, Ownby cites no authority for such a proposition.

Second, even if the imposition of a fine exceeding the Guidelines maximum, but below the statutory maximum, raises Eighth Amendment concerns, the court is satisfied that those concerns are unfounded given the facts of this case. Specifically, the court, by ordering forfeiture, would not be imposing a fine anywhere near the $750,000 statutory maximum. Moreover, the court would not be exceeding the maximum guideline fine by an undue amount. Simply stated, this is not a case presenting such egregious facts as to trigger immediate and searching constitutional scrutiny.

Third, it is not clear that by ordering the forfeiture, the court would be violating the overall fine scheme established by the Guidelines. Indeed, the Guidelines require the court to impose a fine in addition to that called for under the applicable fine range "that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered." U.S.S.G. § 5E1.2(i).[7] Such a fine in this case would be quite substantial. The court imposed a sentence of 36 months imprisonment. The presentence report states that the monthly cost of imprisonment is $1,779.33. Thus, Ownby could be subject to an additional fine of $64,055.88 (36 × $1,779.33 = $64,055.88). Furthermore, the court imposed a three-year term of supervised release. The

presentence report states that the monthly cost of supervision is $195.30. Thus, the court could order yet another fine of $7,030.80 (36 × $195.30 = $7,030.80) to cover the costs of Ownby's supervision. In sum, the court could impose a total fine of $131,086.68, comprised of the $60,000 maximum fine established by the Guidelines, the $64,055.88 potential fine for the costs of incarceration, and the $7,030.80 potential fine for the costs of supervision. Since the Guidelines explicitly empower the court to impose a total fine well in excess of Ownby's $88,737 equity interest, his suggestion that the forfeiture of the real estate violates the fine scheme established by the Guidelines is unavailing.[8]

■■■ For all these reasons, the court concludes that the forfeiture of the real estate is not tantamount to an unconstitutionally excessive fine, even acknowledging that Ownby's equity in the residence exceeds the maximum fine established under the applicable guideline range. This conclusion comports with the Fourth Circuit's pronouncement in *Wild* that, at least in the context of drug-related forfeitures, "only in rare situations will an *in personam* criminal forfeiture ... be excessive in a constitutional sense." *Wild,* 47 F.3d at 676. Of course, before the court can make a definitive judgment as to the proportionality of the fine, it must consider the amount of the forfeiture "in light of the defendant's conduct and the offense committed." *Wild,* 47 F.3d at 676.

### 2.

In analyzing the gravity of Ownby's conduct, the court must place several conflicting factors in the balance. Part of the record suggests that Ownby's conduct was not egregious. First, the record demonstrates that Ownby did not profit from his criminal conduct. There is no evidence that he received, or even sought, financial gain. In a similar vein, the court notes that Ownby did not

---

**7.** This requirement is subject to a defendant's ability to pay the additional fine. *See* U.S.S.G. § 5E1.2(f).

**8.** The court notes that it has not been provided with an estimate of the value of the personal property listed in Count Sixteen as subject to

forfeiture. *See* n. 2, *supra.* However, the court assumes that the value of this personal property—consisting of used computer equipment, a video camera recorder, and several power adaptors—is not significant enough to alter the present analysis.

distribute the offending images to the community at large, nor did he invite members of the community into his home to view the images. Rather, Ownby's conduct was somewhat self-contained. As a consequence, Ownby is not nearly as culpable as individuals who, for example, operate obscene bulletin board businesses for profit. *See, e.g. United States v. Thomas*, 74 F.3d 701 (6th Cir.1996).

There are, however, counterbalancing factors that the court must consider. First, the sheer number of images Ownby received and preserved on floppy disks and on the computer's hard drive, is staggering. Special Agent Harmon testified that, by his conservative estimate, 1,104 of the 1,612 images contained on the 76 floppy disks were of children engaged in sexually explicit conduct. Special Agent Harmon also noted that there were another 329 images that could not be viewed due to software incompatibilities, some of which, the court could reasonably presume, depicted children. Furthermore, the various files on the computer's hard drive contained 64 images of children engaged in explicit sexual conduct, while another 247 images on the hard drive depicted individuals of questionable age. The files on the hard drive also contained 181 images that could not be viewed. In sum, Ownby possessed a collection of some 1,168 images depicting children engaged in sexually explicit conduct. Given that 510 images could not be viewed and that at least 247 images depicted individuals of questionable age, the 1,168 figure may understate the size of Ownby's pernicious collection. Clearly, this is not a case of an isolated transmission or several transmissions. Rather, it is a case involving over 1,000 transmissions. This level of volume suggests a heightened level of culpability on Ownby's part.

Second, Ownby engaged in the culpable conduct over a substantial period of time. Special Agent Harmon testified that Ownby had been trading sexually exploitive images over America On–Line for at least a year and a half to two years. Again, this factor heightens Ownby's level of culpability, in the court's view, since it suggests that Ownby's criminal conduct was not limited to a brief period, but rather extended over years.

Third, the court is troubled by Special Agent Harmon's testimony at Ownby's December 11, 1995 bond hearing before the Magistrate Judge concerning Ownby's use of various "screen names." Specifically, Special Agent Harmon testified that Ownby occasionally posed as a thirteen year-old girl named Kris while on-line. This ruse was successful in manipulating a juvenile male from South Carolina to send a letter and a photograph of himself to Ownby. The court finds such behavior worrisome as it suggests Ownby actively sought interaction with children of a tender age so as to bring them within his sphere of exploitation.

Finally, the court believes that Ownby's extensive trading of sexually exploitive images bespeaks a heightened degree of culpability. Ownby did not simply receive images. Rather, he distributed them on-line to others who shared his criminal fetish. In this way, Ownby helped supply a market of illegal wares and, perhaps, expanded its geographic and popular reach.

The court concludes that these latter factors outweigh those in mitigation. They convincingly demonstrate to this court that Ownby's level of culpability is profound and that a harsh penalty is warranted. The court also feels compelled to point out that few crimes cut to the core of American sensibilities as does the crime of sexually exploiting children. The gravity of the offense is compelling and influences, as it must under the *Wild* analysis, the court's conclusion in this regard.

3.

Ownby contends that the court should consider an additional factor in determining whether the forfeiture of the real estate is unconstitutionally excessive: the property subject to forfeiture is Ownby's home. Ownby cites *United States v. Certain Lots in the City of Virginia Beach, Virginia*, 657 F.Supp. 1062 (E.D.Va.1987) for the proposition that "[c]ourts have traditionally drawn a distinction between one's personal property and one's home, according the latter far greater protection under the law." *Id.* at 1065.

However, in *United States v. Santoro*, 866 F.2d 1538 (4th Cir.1989), the Fourth Circuit affirmed the civil forfeiture of defendants' home, stating that "while we recognize that the home has a protected place in our jurisprudence, *Certain Lots, supra*, at 1065, we cannot sanction a rule that gives favored protection to drug dealers who choose to deal directly from their homes." *Id.* at 1542–43. Thus, the fact that the property sought to be forfeited in this case is a residence should not unduly influence the analysis.

The Eighth Circuit recently discussed the degree to which courts should consider the intangible value of property in ruling on the propriety of *in personam* criminal forfeitures. *See United States v. Bieri*, 68 F.3d 232 (8th Cir.1995), *petition for cert. filed*, 64 U.S.L.W. 3625 (U.S. Mar. 5, 1996) (No. 95–1413). In *Bieri*, the court held as follows:

> ■ We conclude that the dicta in [*United States v. One Parcel of Real Property Located at 9638] Chicago Heights[, St. Louis*, 27 F.3d 327 (8th Cir.1994)] enumerating intangible factors, including the property's character as a residence or the effect of forfeiture on innocent occupants and children, may be relevant to the Eighth Amendment analysis in some cases. This may be true in civil *in rem* forfeiture cases where the owner has not been convicted of any crime. *See United States v. Real Property at 6625 Zumirez Drive*, 845 F.Supp. 725 (C.D.Cal.1994) (forfeiture of residence was found to be excessive where property owner was acquitted of state criminal drug charges). However, especially in criminal *in personam* forfeiture, the property's character as a residence and the effect of forfeiture on innocent occupants are factors whose importance diminishes as the duration and extent of the defendant's culpability and use of the property to facilitate criminal conduct rises.

*Id.* at 237. Of course, in the present case, no innocent occupants or children would be affected by the forfeiture. And as discussed above, the court concludes that the duration and extent of Ownby's culpability are both significant. Ownby's use of the home to facilitate the criminal conduct is less striking. However, it is clear that the privacy afforded by the dwelling was essential to Ownby's commission of the charged offenses. Indeed, the record indicates that Ownby placed the computer in his home, in part, to avoid the watchful eyes of co-workers.[9] For these reasons, the court cannot find that the character of the property as a residence precludes its forfeiture in this case.

In summary, the court concludes that the Eighth Amendment's prohibition of excessive fines does not serve to bar the forfeiture of Ownby's residence in this case.

## III.

### A.

As noted at the outset, Ownby is currently serving three consecutive twenty year state sentences, with thirteen years on each charge suspended, for committing forcible sodomy upon a minor. Prior to the April 29, 1996 federal sentencing hearing, Ownby filed a motion asking the court to order that his impending federal sentence run concurrently with his undischarged state sentence. For the reasons more fully articulated below, the court denies the motion.

### B.

Section 5G1.3 of the Sentencing Guidelines addresses the imposition of sentence on a defendant who is subject to an undischarged term of imprisonment. This provision was amended in November, 1995 to provide in relevant part as follows:

> (c) (Policy Statement)[10] In any other case, the sentence for the instant offense

---

9. The court also notes that counsel for Ownby has conceded that the residence is subject to forfeiture under 18 U.S.C. § 2253, a requirement of which is that the property be used "to commit or to promote the commission of" the offense. 18 U.S.C. § 2253(a)(3).

10. Unless inconsistent with the Guidelines, federal statutes, or the Constitution, policy statements and commentary in the sentencing guidelines are binding. *See Stinson v. United States*, 508 U.S. 36, 37, 41, 113 S.Ct. 1913, 1915, 1917, 123 L.Ed.2d 598 (1993); *United States v. Wiley–Dunaway*, 40 F.3d 67, 70–71 (4th Cir.1994) (enforcing § 5G1.3(c) as a guideline).

567

*may be imposed* to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3 (emphasis supplied).[11]

This permissive language replaced the mandatory language of § 5G1.3(c) that existed prior to the 1995 amendment. That language read as follows:

> (c) (Policy Statement) In any other cases, the sentence for the instant offense *shall be imposed* to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense (emphasis supplied).

Thus, § 5G1.3(c) was amended to "afford[ ] the sentencing court additional flexibility to impose, as appropriate, a consecutive, concurrent, or partially concurrent sentence in order to achieve a reasonable punishment for the instant offense." U.S.S.G.App.C. at 449 (Amendment 535).

In addition to changes in the substantive language of subsection (c), the commentary to § 5G1.3(c) was dramatically altered by the 1995 amendment. Prior to the amendment, the commentary set out a rather involved methodology for determining whether a sentence should run consecutively, concurrently, or partially concurrently to an undischarged prison term. Specifically, the commentary's heuristic was designed to allow for a "sentence for the instant offense that, together with the undischarged term of imprisonment, approximates the sentence that would have been imposed if the instant offense and the offense underlying the undischarged term of imprisonment were before the court simultaneously for sentencing pursuant to U.S.S.G. § 5G1.2 [Sentencing on Multiple Counts of a Conviction]." *United States v. Hill*, 59 F.3d 500, 502 (4th Cir.1995).

Thus, the prior commentary advised courts to attempt to figure out a "combined guideline range" for the two offenses and to impose a sentence within the instant guideline range that, when added to the undischarged term, fell within the combined guideline range.

The Sentencing Commission amended the commentary to § 5G1.3(c) in 1995, stripping away its "combined guideline range" methodology. In its stead is the simple requirement that courts, in deciding whether to impose concurrent, partially concurrent, or consecutive sentences, achieve "a reasonable punishment and avoid unwarranted disparity." U.S.S.G. § 5G1.3, Application Note 3. To achieve this goal, the amended provision invites courts to consider the factors set forth in 18 U.S.C. § 3553(a), the statutory provision governing the imposition of criminal sentences. Those factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—

---

11. Section 5G1.3 additionally provides as follows:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted form offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

U.S.S.G. § 5G1.3.

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In addition, the amended commentary to § 5G1.3 asks courts to consider the following factors:

(a) the type (e.g. determinate, indeterminate/parolable) and length of the prior undischarged sentence;

(b) the time served on the undischarged sentence and the time likely to be served before release;

(c) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and

(d) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

U.S.S.G. § 5G1.3, Application Note 3.

The court notes the recent legislative history of § 5G1.3 because both parties presented argument at the April 29, 1996 sentencing hearing that drew direction from the prior regime. Indeed, Ownby sets out in a memorandum calculations for determining the "combined guideline range" in arguing that the federal sentence should be imposed concurrently. However, it is clear that Ownby must be sentenced under the amended version of § 5G1.3(c). See U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced").

Thus, the court need only consider the various factors listed above in determining whether to impose a concurrent, partially concurrent or consecutive sentence. The court turns to this task below.

### C.

The Presentence Report calculates Ownby's offense level as nineteen and his Criminal History Category as II. These figures establish a guideline range of 33–41 months imprisonment. Under the state sentencing guidelines, Ownby will be eligible for discretionary parole from the state system after approximately 168 months. See Va. Code. § 52.1–151 E1 (persons convicted of forcible sodomy eligible for parole after serving two-thirds of prison term).[12] Thus, were the court to sentence Ownby to 41 months imprisonment, the maximum possible term of imprisonment under the applicable guideline range, and, additionally, were the court to order that such term be served concurrently with the state term, Ownby would not receive any additional prison time to that he must already serve in the state system. Such a result gives the court pause since the state offense is significantly distinct from the federal offenses. Thus, the court concludes that it must impose some consecutive term of imprisonment so as to provide for deterrence and punishment in the instant case.

However, the court must still determine the length of such a consecutive sentence. It would certainly be appropriate to sentence Ownby to the top of the applicable

---

12. Ownby states in a memorandum in support of his motion to run the federal sentence concurrently with the state sentence that he will be eligible for parole after serving 48 months imprisonment. In light of the governing provision of the Virginia Code, the court questions Ownby's calculation. This difference in computation, however, docs not materially alter Ownby's argument discussed in part D, infra.

guideline range. As noted above, Ownby's conduct does not counsel for leniency. The large number of offending images collected by Ownby, the use of "screen names" to entice young children into conversation, the length of time Ownby engaged in the conduct, and the fact that Ownby was an active trader of the images all cause this court grave concern. Moreover, Ownby is eligible for an upward departure pursuant to U.S.S.G. § 2G2.2, Application Note 5 which states that "[i]f the defendant sexually exploited or abused a minor at any time, whether or not such sexual abuse occurred during the course of the offense, an upward departure may be warranted." U.S.S.G. § 2G2.2, Application Note 5. Certainly, Ownby's state conviction for sodomizing a minor would warrant an upward departure under this provision. Although the court declines to depart upward in this case, the existence of a predicate for such a departure suggests that a sentence at the top end of the applicable guideline range is appropriate.

However, the court believes that the imposition of a 41 month consecutive sentence is inappropriate in this case given that Ownby will serve at least (and probably more than) 168 months in state prison. Rather, the court believes that a sentence near the bottom of the applicable guideline range, if served consecutively to the state term, affords the proper balance between deterrence and punishment on the one hand, and general equity principles on the other. Although the court concludes that the federal offenses involve significantly different conduct than that underlying the state offense, the court is mindful that both offenses stem from the same criminal proclivity afflicting Ownby. For these reasons, the court imposes a sentence of 36 months imprisonment to be served consecutively to Ownby's undischarged state term. The court believes such a sentence constitutes "a reasonable punishment" under the facts of this case. U.S.S.G. § 5G1.3(c).[13]

### D.

■ For the sake of completeness, the court notes that even if it wished to labor under the pre-amendment commentary to § 5G1.3 in fashioning its sentence, it would not be constrained to impose a concurrent federal sentence. Based upon Ownby's calculations, Ownby's "combined guideline range" would be 37–46 months.[14] As noted in the presentence report, Ownby's guideline range for the instant offense is 33–41 months. Ownby will be eligible for discretionary parole after serving approximately 168 months in state prison. Under the old commentary to § 5G1.3(c), the court would have to impose a sentence within the instant offense guideline range (33–41 months) such that the total state and federal time Ownby would be likely to serve would fall within the 37–46 month combined guideline range. Ownby argues that since he will serve at least 168 months on the state charge, the court must run the federal sentence concurrently to the 168 month state term since any consecutive sentence would result in a total state and federal term of imprisonment of over 46 months, the upper limit of the combined guideline range. Thus, Ownby argues that an appropriate federal sentence is one of up to 41 months (the upper limit of the guideline range for the instant offense) to run concurrently with the state term.

Ownby cites *United States v. Myers*, 66 F.3d 1364 (4th Cir.1995) for his proposition. In that case, the court vacated the consecutive sentence of one of the defendants, reasoning that "if the district court imposed *any part* of Jarmal's instant offense federal sentence consecutive to his state sentence, the court would be exceeding the hypothetical combined guideline range by at least 153 months." *Id.* at 1378.

Even accepting that the pre-amendment commentary to § 5G1.3 contains the presumed methodology for determining the ap-

---

**13.** The court is aware that it could order part of the 36–month term to run concurrently, and the balance to run consecutively, to the undischarged state term. However, the court declines to do so, believing that a 36–month consecutive sentence is appropriate in this case.

**14.** Ownby utilizes U.S.S.G. § 2A3.2 (Criminal Sexual Abuse of a Minor) in calculating his combined guideline range.

propriate sentence, the court would not be constrained to follow that methodology. In the leading pre-amendment Fourth Circuit case of *United States v. Wiley–Dunaway*, 40 F.3d 67 (4th Cir.1994), the court held that although the commentary methodology indicates that a specific sentence should be imposed, "that section, read in light of 18 U.S.C. § 3584(a) and Application Note 3, only requires that the district court 'consider' such a sentence 'to the extent practicable' to fashion a 'reasonable incremental punishment.'" *Id.* at 72 (quoting U.S.S.G. § 5G1.3 Application Note 3); *see also Myers*, 66 F.3d at 1378 ("If the district court on remand should decide to use a method other than that outlined in § 5G1.3 for calculating Jarmal's sentence, it must articulate on the record its reasons for doing so"). Indeed, on remand in *Wiley–Dunaway*, the district court declined to follow the commentary's methodology. *United States v. Wiley–Dunaway*, 882 F.Supp. 85 (S.D.W.Va.), *aff'd*, 72 F.3d 128 (4th Cir.1995). Instead, the district court substituted an alternative methodology based upon the frequency and severity of defendant's embezzlement charges and the policy objectives of punishment and deterrence, explaining that a concurrent sentence would be "meaningless as far as incarceration is concerned because [the defendant] would serve no more time than she is already required to serve on her undischarged sentences." *Id.* at 89, n. 8. The court ultimately sentenced the defendant to a 12 month consecutive term. *Id.* at 89.

A similar situation is presented here—under the pre-amendment commentary methodology of § 5G1.3, the prescribed concurrent federal sentence would be "meaningless" since Ownby's minimum state prison term would exceed any federal sentence imposed. The court, therefore, would be justified in imposing a consecutive sentence. Thus, even under Ownby's pre-amendment analysis, the court would still be free to impose a consecutive term of imprisonment, although it would have to note its reasons for abandoning the commentary's methodology. As stated above, a compelling reason for doing so in this case is that were the court to abide by the commentary's methodology, Ownby would receive a "free ride" with respect to

his federal offenses. *Wiley–Dunaway*, 882 F.Supp. at 89. Given the extent of Ownby's criminal conduct, described *supra*, such a result would be inappropriate.

## IV.

In summary, the court reiterates its conclusions stated from the bench, that the forfeiture of Ownby's residence is not violative of the Excessive Fines Clause of the Eighth Amendment. Ownby's equity in the residence is well below the maximum fine sanctioned by statute. Moreover, the gravity of the crime, coupled with the defendant's degree of culpability, convince the court that forfeiture of Ownby's residence does not amount to a constitutionally excessive fine under the Eighth Amendment. Accordingly, the court rules that the forfeiture of Ownby's residence falls squarely within constitutional bounds and, consequently, overrules Ownby's objection to forfeiture.

In addition, the court denies Ownby's motion to have his federal sentence run concurrently with his undischarged state prison term. The court concludes that a consecutive sentence is required in this case to achieve an appropriate level of deterrence and punishment.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.